## NICHOLAS KARPOUZIS, Appellant
### v.
## GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

D.C. Crim. App. No. 96-257

Terr. Ct. Crim. No. F401-1996

District Court of the Virgin Islands

Div. of St. Croix

March 27, 1997

VALERIE E. COLLANTON, ESQ., St. Thomas, U.S.V.I., *for Appellant*

JOEL H. FELD, ESQ., (Assistant Attorney General), St. Thomas, U.S.V.I. *for Appellee*

MOORE, *Chief Judge*, FINCH and STEELE, *Judges*

## OPINION OF THE COURT

PER CURIAM

On appeal, pretrial detainee Nicolas Karpouzis ["appellant"] challenges the trial judge's denial of his motion for bail reduction. Bail was set in the amount of $ 2 million, and appellant has been detained based on his inability to post the requisite amount. For the reasons set forth below, this Court will vacate the $ 2,000,000 bail and remand this matter to the Territorial Court to set a reasonable bail consistent with the standards set forth in this Opinion.

## FACTUAL BACKGROUND

The record reflects that appellant was arrested on October 1, 1996 for alleged white-collar criminal activity, which the affidavit in support of the arrest warrant asserted resulted in losses of approximately $ 167,000. Although these offenses are not among those dangerous crimes for which pretrial detention is available under Virgin Islands law, appellant nevertheless was initially held without bail. At the advice of rights hearing, for which no record has been provided, bail was set at $ 2,000,000. Appellant was subsequently charged in a twenty-count information with various nonviolent, white-collar offenses, including: obtaining money by false pretenses (8 counts); forgery (1 count); grand larceny (3 counts); drawing and delivering worthless checks (6 counts); and 2 counts of Virgin Islands RICO-like corruption crimes for the 14 counts listed above, indicating a total loss of less than $ 300,000). Karpouzis pled not guilty and requested a reduction of bail to $ 200,000 with a 10% provision, appointment of a third party custodian, and the use of electronic monitoring.

On October 23, 1996, a hearing was held on the motion to modify the bail conditions. Because appellant was not charged with violent crimes, his risk of flight was the only factor addressed. Karpouzis' proffered a third party custodian, a 52-year resident of St. Thomas who has worked steadily on-island for 27 years. The custodian stated that he had known appellant for approximately one year and nine months, that he found appellant responsible,

and that if required, he would post a property bond on appellant's behalf. The custodian did not contemplate personal monitoring appellant's activities on a daily basis, although he would keep in daily telephone contact.

Virtually all of the Government's evidence centered on the merits of the actual charges, with the prosecutor making allusions to the Government's intent to file additional charges against appellant. Government witnesses included an alleged victim, who testified that appellant appeared at the scheduled hearing with the Licensing and Consumer Affairs ["DLCA"] after she filed an administrative complaint against him. DLCA directed appellant to start repairs on the woman's home. Appellant failed to appear at the complainant's residence on the agreed-upon day. Upset, the complainant reacted by confronting appellant at his home. During the confrontation, appellant allegedly stated, "I know the law here. By the time these cases come up, I'll be long gone [apparently referring to any potential civil lawsuit]." The complainant further testified that appellant, with the assistance of his wife, lied about his whereabouts in an attempt to avoid her.

Nowhere in the record, however, is there any evidence or effort by the Government to show that the appellant had ever attempted to flee the island after being confronted with these allegations. On the contrary, the witness conceded on cross-examination that Hurricane Hortense had been predicted to hit the Territory on the day appellant was scheduled to meet with her. She also conceded that appellant's wife had told her that appellant would not be able to start repairs that day because of the impending hurricane, which stopped virtually all business activity that day.[1]

A DLCA staff member testified that Platinum Construction, the company that appellant operated as president, filed a form listing the office of appellant's lawyer as the principal place of business. Again, on cross-examination, the DLCA staffer conceded that appellant had been authorized by his attorney to list the law office as the principal place of business. Appellant also represented in the form that he had never been convicted of a felony or crime

---

[1] Transcript of October 23, 1996 Hearing ["Tr."] at 70-71, 169.

involving moral turpitude.[2] A special agent working with the Virgin Islands Department of Justice testified that, contrary to appellant's written declarations, appellant had at least three earlier convictions: driving under the influence of alcohol, a misdemeanor, in 1993, aggravated felonious assault with a gun[3] in 1987, and a drug offense in 1984.[4]

The special agent recited that appellant had failed the local contractor's exam twice, and then detailed certain discrepancies in appellant's two DLCA applications for a contractor's license. On his November 16, 1995 application, appellant stated that he did not reside in the Virgin Islands. On his December 15, 1995 application, however, he represented that he had been a resident for the past eleven months. The special agent also testified that his investigation had shown that appellant did not graduate from either university listed on either application. The agent further stated that he believed appellant had misappropriated about $ 298,000.[5]

The Government's attorney characterized appellant's request for reduction, if granted, as a 99% reduction of the $ 2 million bail amount. In arguing to dissuade the trial judge from granting any reduction, the Government relied on the substantive evidence against appellant, the complaining witness' interpretation of appellant's alleged comments that he would not be around when it came time to collect any judgments against him, and appellant's alleged misstatements on the DLCA forms. The Government did concede, however, that a $ 1,000,000 bail would be sufficient to ensure appellant's presence at trial.[6] Appellant's attorney responded that her client could not afford to post bail of $ 1 million, or even $ 500,000.

Appellant's counsel argued that her client's two more serious convictions were almost ten years old. Tr. at 162-64. Counsel

---

[2] Tr. at 96.

[3] Appellant's attorney indicated that the weapon was actually tear-gas. Tr. at 163. He was also convicted of the related offenses of intimidation and possession of a weapon.

[4] The investigating agent stated that it occurred in 1994, although the Government's evidence showed that the conviction occurred in 1984. Tr. at 109-11.

[5] The agent then alleged that appellant had lied to the court during an earlier proceeding when he denied ever visiting the British Virgin Islands. Tr. at 114.

[6] Tr. at 180.

further argued that the charging document was defective because it failed to allege that appellant had actually acquired property or money as a result of his alleged actions, noting her intent to move to dismiss the charges. Appellant also proffered the third-party custodian and argued that the reduced monetary bond, custodian plus house arrest and electronic monitoring would be sufficient to assure his appearance at trial.

The trial judge relied on a decision of the United States Court of Appeals for the First Circuit for the proposition that the Territorial Court may set bail beyond a defendant's financial capabilities if it is reasonably necessary to ensure defendant's appearance at trial.[7] The trial court reviewed the appellant's character, family ties, community ties, and prior criminal history. Tr. at 187-98. The judge placed great emphasis on the discrepancies contained in appellant's application forms, information he provided to his attorneys, and statements made to the court regarding his previous criminal history. One of the factors noted was the potential 175 years in prison plus a hefty fine appellant faces if convicted of all counts.[8] Based on no evidence in the record, and without any articulation of the reasons for his conclusion, the judge stated that he believed that, "even with any bracelet or otherwise," appellant would take any means necessary to avoid the charges, including absconding from the Territory. Tr. at 199. The net result was that the Territorial Court refused to reduce the $ 2,000,000 bail or set other conditions to assure appellant's appearance at trial, but did agree to expedite trial. This timely appeal followed.

## DISCUSSION

The issue of the criteria for the judges of the Territorial Court to apply in setting conditions of release for persons charged with non-violent, non-dangerous, non-drug crimes under Virgin Islands law is one of first impression. Persons charged with certain violent,

---

[7] Tr. at 183. *See United States v. Mantecon-Zayas,* 949 F.2d 548 (1st Cir. 1991) (federal drug charges). The judge also cited *United States v. Szott,* 768 F.2d 159 (7th Cir. 1985) ($ 1 million bail not excessive when alleged losses exceeded $ 2.6 million and defendant was a short-time noncitizen resident with no family ties to community).

[8] The trial judge stated that he would "not consider anything involving any possible civil suits against this defendant as to whether or not there is a flight risk." Tr. at 176, 183.

dangerous, drug crimes are governed by V.I. Code Ann. tit. 5, § 3504a and the standards set forth in this Court's decision in *Smalls v. Government of the Virgin Islands*, 30 V.I. 82 (D.V.I. App. 1994). We have further recognized that Territorial Court Rule 141(b) requires the trial judge to be guided by The Bail Reform Act, 18 U.S.C. §§ 3141-3150 ["BRA"], in considering pretrial release of a defendant. *Id.* at n.1.[9] We here refine the standard of review of pretrial release orders for such "non-dangerous" defendants and the nature and extent of the guidance the BRA supplies to the Territorial Court in setting conditions to assure presence of the defendant at trial.

## Standard of Review

This Court has already ruled that we may amend or reverse a detention or release decision if review of the record compels a different result, although we cannot wholly ignore the trial court's reasoning. *Smalls*, 30 V.I. at 85. The Appellate Division is charged with the independent review of the trial judge's refusal to reduce the monetary bail, while giving deference to the trial judge's factual findings.[10] We adopt the view that independent review represents an intermediate level of scrutiny, which is more rigorous than the abuse-of-discretion or clear-error standards, but less stringent than plenary or *de novo* review.[11]

> [A]ppellate courts give the reasons articulated by trial judges respectful consideration, but if, after careful as-

---

[9] Rule 141(b) provides:

Whenever a person charged with an offense is before a judge of this court for release on bail prior to trial, pursuant to these rules, the judge shall, in considering the release of such person, be guided by and apply the appropriate provisions of "The Bail Reform Act", Public Law 98-473, October 12, 1984, 18 U.S.C. §§ 3141-3156 (1985), which Act is by this reference incorporated into and made a part of these rules.
Terr. Ct. R. 141(b).

[10] 9 James Wm. Moore, Moore's Federal Practice P 209.04 (2nd ed. 1996 & Supp.) We reject the standard of abuse of discretion the trial court would have us apply. Tr. at 186 (citing *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) and *Fassler v. United States*, 858 F.2d 1016 (5th Cir. 1988)(en banc), *cert. denied*, 490 U.S. 1099, 104 L. Ed. 2d 1004, 109 S. Ct. 2450 (1989)).

[11] *Accord, United States v. Tortora*, 922 F.2d 880, 883 (1st Cir. 1990) (quoting *United States v. O'Brien*, 895 F.2d 810, 814, 814 (1st Cir. 1990) ("If upon careful review of all the facts and the trial judge's reasons the appeals court concludes that a different result should have been reached, the detention decision may be amended or reversed.").

sessment of the trial judge's reasoning, together with such papers, affidavits, and portions of the record as the parties present, the court of appeals independently reaches a conclusion different from that of the trial judge the court of appeals has the power to amend or reverse a detention or release decision.

*United States v. Delker*, 757 F.2d 1390, 1400 (3d Cir. 1985)(citing *United States v. Provenzano*, 605 F.2d 85, 93 (3d Cir. 1979) (the appellate court has the power to set bail pending appeal if the appellate court independently reaches a conclusion different from the trial judge's after careful assessment of the trial judge's statement of reasons, and such papers, affidavits and portions of the record as the parties present)).[12]

*Criteria For Pretrial Release of Persons Charged with "Non-dangerous" Offenses*

■ Our starting point is Terr. Ct. R. 141(a), which requires that "all persons shall, before conviction, be bailable by sufficient sureties by a judge."[13] Once a rule or statute provides the right to be admitted to bail, the monetary bail imposed may not be

---

[12] *Accord United States v. Himler*, 797 F.2d 156, 159 (3d Cir. 1986) (prohibiting the appellate tribunal from ignoring the trial court's reasons, but permitting the appellate court to amend or reverse if it reached a different conclusion after an independent review). This Court has the power to set bail pending appeal if we independently reach a conclusion different from the trial judge's after careful assessment of the trial judge's statement of reasons and such papers, affidavits and portions of the record as the parties present. *See United States v. Provenzano*, 605 F.2d 85, 93 (3d Cir. 1979).

[13] The other provisions of Rule 141 define "bailable by sufficient sureties" and allow for third-party custodian:

(c) Bail and other conditions of release shall be ordered in any of the following categories, except as otherwise provided for serious felony offenses:

1. *Cash Bail Bond.* A sum of money designated in an order fixing bail and posted with the court by a defendant or by another person on his behalf upon condition that such money will be forfeited if the defendant: (1) does not comply with the directions of the court requiring his appearance at the criminal trial or related proceedings and (2) does not otherwise render himself amenable to the orders and processes of the court.

2. *Surety Bond.* An undertaking by the defendant and his sureties, jointly or severally, that the defendant shall appear for trial or any related proceeding as ordered and if he fails to do so, he and the sureties shall pay the V.I. Government the amount set by the court as bail for the defendant, or the property used to secure the defendant's release may be forfeited to the extent of the bail . . . .

3. *Unsecured Bail Bond.* A bail bond in an amount for which the defendant is fully and personally liable upon his failure to appear in court when ordered to do so or upon his

excessive. Freedom from excessive bail is one of the rights guaranteed by the Eighth Amendment. Moreover, pretrial detention implicates a liberty interest and thus may not be imposed contrary to the mandates of procedural due process.[14] *E.g., Morrissey v. Brewer*, 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593, (1972). Further, the BRA prohibits "the judicial officer [from] imposing a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). It is the meaning of this provision as applied to the Territorial Court which occupies the balance of this Opinion.

Only Pretrial Release — Not Pretrial Detention — Provisions of BRA Guide the Territorial Court

In the Virgin Islands, the procedures set forth in the BRA are just a guide and not substantive law. Therefore, before proceeding any further, it is essential that we first delineate which portions of the BRA apply and provide guidance to the pretrial bail determinations of the Territorial Court. In federal court for persons accused of federal crimes, the BRA governs the procedure for the trial judge to determine pretrial release as well as pretrial detention. Those persons charged with Virgin Islands offenses in the Territorial Court who can be detained before trial, however, are particularly and narrowly limited under the substantive law of the Virgin Islands. Only persons charged with certain defined "dangerous

---

breach of a material condition of release, but which is not secured by any deposit of or lien upon property.

4. *Personal Recognizance.* Pre-trial release based upon the person's own promise that he will appear for trial or any proceeding in connection therewith as ordered by the court. This type of bail is used in place of a bail bond when the judge is satisfied that the defendant will appear without the need for a surety bond or other form of security.

(d) Third Party custodian. In addition to the foregoing, the court may require a third party custodian to further ensure compliance with the terms of the release and the appearance of the defendant in each of the foregoing instances. Each custodian must fully execute under oath the Third Party Custodian Consent Form before a defendant may be released.

[14] "Excessive bail shall not be required," and the Eighth Amendment and the Due Process Clause of the 14th Amendment are made applicable to the Virgin Islands under section 3 of the Revised Organic Act of 1954. The Revised Organic Act of 1954, 48 U.S.C. §§ 1541-1645 (1996), *reprinted in* V.I. Code Ann., Historical Documents, 73-177 preceding tit. 1 (codified as amended) (1995)["Revised Organic Act"].

crimes" may be detained pretrial under 5 V.I.C. § 3504a.[15] Since the Territorial Court, and this Court, can order pretrial detention solely for these specific defined offenses, only those portions of the BRA which govern pretrial release can provide guidance for setting bail conditions for persons charged with non-dangerous Virgin Islands offenses, namely, 18 U.S.C. §§ 3142 (a)(1) & (2), (b), (c), (g), (h) & (j) (which, although lengthy, are reproduced in the margin).[16]

---

[15] Persons who may be detained pretrial are those charged with a "dangerous crime", namely, "murder in the first degree, rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, or drug trafficking (which shall mean trafficking in marijuana, hashish, cocaine, dangerous drugs, morphine or opium as provided in Title 19, section 614a, Virgin Islands Code)," and a person charged with any offense who, "for the purpose of obstructing or attempting to obstruct justice, threatens, injuries [sic] or intimidates or attempts to threaten, injure or intimidate any prospective witness or juror," 5 V.I.C. § 3504a(a)(1) & (2).

[16] § 3142 Release . . . of a defendant pending trial
(a) In general. Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be —
    (1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
    (2) released on a condition or combination of conditions under subsection (c) of this section . . . .
(b) Release on personal recognizance or unsecured appearance bond. The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release, unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required . . . .
(c) Release on conditions. (1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required . . . , such judicial officer shall order the pretrial release of the person —
    (A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release; and
    (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person —
        (i) remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;
        (ii) maintain employment, or, if unemployed, actively seek employment;
        (iii) maintain or commence an educational program;
        (iv) abide by specified restrictions on personal associations, place of abode, or travel;
        (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;
        (vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

140

(vii) comply with a specified curfew;

(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon;

(ix) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

(x) undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

(xi) execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial offer may require;

(xii) execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient. unencumbered value to pay the amount of the bail bond;

(xiii) return to custody for specified hours following release for employment, schooling, or other limited purposes; and

(xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

(2) The judicial officer may not impose a financial condition that results in the pretrial detention of the person.

(3) The judicial officer may at any time amend the order to impose additional or different conditions of release.

. . .

(g) **Factors to be considered.** The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required . . . , take into account the available information concerning —

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including —

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) [i]n considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

(h) **Contents of release order.** In a release order issued under subsection (b) or (c) of this section, the judicial officer shall —

(1) include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct; and

which render inapposite the decisions of federal courts relied on by the trial judge to conclude that he could set a monetary bail which exceeds the financial means of the appellant. Contrary to what the law allows in the Virgin Islands, the judicial officer setting conditions for a person charged with any federal crime, whether it could be classified as dangerous or not, can convert a pretrial release proceeding to a pretrial detention hearing under the BRA under certain circumstances. If, for example, the judicial officer determines that a monetary bond which exceeds the defendant's means is required to insure his or her appearance at trial, the judicial officer can detain the defendant in spite of the prohibition of section 3142(c)(2) that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, in the decision of the First Circuit Court of Appeals relied on so heavily by the trial judge, the court of appeals ruled that the

> legislative history on which we relied[17] says that when a defendant informs the court that the bail amount exceeds his means, the court may nonetheless insist on the financial condition if the judge finds that such bail is reasonably necessary to ensure the defendant's presence at trial.

---

(2) advise the person of —
　(A) the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release;
　(B) the consequences of violating a condition of release, including the immediate issuance of a warrant for the person's arrest; and
　(C) sections 1503 of this title (relating to intimidation of witnesses, jurors, and officers of the court), 1510 (relating to obstruction of criminal investigations), 1512 (tampering with a witness, victim, or an informant), and 1513 (retaliating against a witness, victim, or an informant).
　. . .
(j) Presumption of innocence. Nothing in this section shall be construed as modifying or limiting the presumption of innocence.

[17] The court refers to an earlier decision, *United States v. Jessup*, 757 F.2d 378, 379 (1st Cir. 1991) (BRA "requires judicial officers making bail decisions to apply a rebuttable presumption that one charged with a serious drug offense will likely flee before trial"). The *Jessup* opinion points out that the BRA makes it both more difficult and easier for the judicial officer to order pretrial detention of those accused of federal crimes. "It makes it harder by specifying explicitly what was implicit in prior law, namely that magistrates and judges cannot impose any "financial condition" that will result in detention. § 3142(c). . . . High money bail cannot be used as a device to keep a defendant in custody before trial." *Id.* at 379-80. The portions of the BRA which make detention easier by broadening the category of persons whom the officer can order detained, of course, do not apply to persons charged with Virgin Islands offenses. *Compare id.*

This is because the Bail Reform Act authorizes judicial officers to order pretrial detention where no condition or combination of conditions can "reasonably assure" the defendant's presence. In other words, when the defendant cannot meet the conditions that the court thinks will reasonably assure his presence, and the court finds that less stringent conditions (which the defendant, perhaps, can meet) will not give adequate assurance, the court is entitled to conclude that detention is necessary until trial. *See* S.Rep. No. 225, 98th Congress, 2d Session at 16, *reprinted* in 1984 U.S.Code Cong. & Ad. News 3182, 3199.

. . .

Although the Bail Reform Act allows the court to insist on a particular bail amount when it concludes that a lesser amount will not reasonably assure the defendant's presence at trial, the statute does not allow "the sub rosa use of money bond" to detain defendants whom the court considers dangerous, but whose dangerousness, for whatever reason, the court cannot document with . . . clear and convincing evidence [same standard of proof as 5 V.I.C. § 3504a(c)] . . . .

*United States v. Mantecon-Zayas*, 949 F.2d 548, 550-51 (1st Cir. 1991).

The only case we have been able to find in this Circuit treating this issue is a district court opinion out of *New Jersey, United States v. Lemos*, 876 F. Supp. 58, 60 (D.N.J. 1995). Noting that the question whether 18 U.S.C. § 3142 (c) entitles a defendant to bail set at an amount he can afford to pay is a matter of first impression in this Circuit, the Lemos court reviewed and relied upon the same legislative history referenced in *Mantecon-Zayas*.

This history, really in the form of a commentary, provides a chart for courts navigating the complexities of section 3142.

[S]ection 3142(c) provides that a judicial officer may not impose a financial condition of release that results in the pretrial detention of the defendant. The purpose of this provision is to preclude the sub rosa use of money bond to detain dangerous defendants. *However, its application*

143

*does not necessarily require the release of a person who says he is unable to meet a financial condition of release which the judge has determined is the only form of conditional release that will assure the person's future appearance.* Thus, for example, if a judicial officer determines that a $ 50,000 bond is the only means, short of detention, of assuring the appearance of a defendant who poses a serious risk of flight, and the defendant asserts that, despite the judicial officer's finding to the contrary, he cannot meet the bond . . . then it would appear that there is no available condition of release that will assure the defendant's appearance. This is the very finding which . . . is the basis for an order of detention, and therefore the judge may proceed with a detention hearing . . . and order the defendant detained, if appropriate. The reasons for the judicial officer's conclusion that the bond was the only condition that could reasonably assure the appearance of the defendant, the judicial officer's finding that the amount of the bond was reasonable, and the fact that the defendant stated that he was unable to meet this condition, would be set out in the detention order . . . .

S.Rep. No. 98-225, 98th Cong., 1st Sess., at 16, *reprinted* in 1984 U.S.C.C.A.N. 3182, 3199.[18]
*Lemos*, 876 F. Supp. at 60.

■ This option of converting a bail hearing into a pretrial detention hearing for a person charged with a non-dangerous crime simply is not available to the Territorial Court. Accordingly, the trial court may not use a high monetary bail amount as a pretext to detain a non-dangerous defendant.

Bail as Condition of Release must be Reasonable and Within the Financial Means of the Defendant

■ The Territorial Court judge is first required to ascertain

---

[18] The court notes that this passage has been relied on by the other courts following *United States v. Mantecon-Zayas*, 949 F.2d at 550-51, *e.g., United States v. McConnell*, 842 F.2d at 108; *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985); *United States v. Gotay*, 609· F. Supp. 156, 158 (S.D.N.Y. 1985).

whether the release of a non-dangerous defendant on his own recognizance or unsecured appearance bond will reasonably assure defendant's appearance at trial. *See* 18 U.S.C. § 3142(b). If it will not, then the judge *"shall* order the pretrial release of the person . . . subject to the least restrictive further condition, or combination of conditions, that the [judge] determines will reasonably assure the appearance of the person as required, which may include" one or more of the fourteen conditions listed in 18 U.S.C. § 3142(c)(1)(B).[19] One of those conditions may be a monetary bond, so long as "a financial condition" does not "result[] in the pretrial detention of the person." In the circumstances of a defendant charged with a "non-dangerous" offense, the *least restrictive* monetary bail is an amount that is within the financial means of the defendant, for the legal authority to convert the money bail to a detention order is simply not available to the Territorial Court. As previously pointed out, only persons charged with dangerous crimes as defined in 5 V.I.C. § 3504a(1) may be detained before trial. The BRA is just a guide and its pretrial detention provisions are not the substantive law of the Virgin Islands.

■ In the Virgin Islands, TERR. CT. R. 141(a), together with the applicable provisions of the BRA, including section 3142(c)(2)'s

---

[19] Dangerousness to others and the community is not a factor to be considered in setting pretrial release conditions for persons charged with non-dangerous crimes in the Territorial Court. Thus, all references to endangering the safety of any other person or the community in the portion of 18 U.S.C. §§ 3142 quoted in note 16 have been removed as a part of the BRA which gives pretrial release guidance. This has been done for two reasons: (1) danger to the community was not considered by the trial judge in setting conditions for appellant's release, and (2) authority for the Territorial Court to consider dangerousness as a factor in setting pretrial bail is a matter of substantive law. Nothing in TERR. CT. R. 141 or any other law of the Virgin Islands authorizes the lower court to consider danger to any person or the community as a factor in setting bail before trial in non-dangerous crimes. The significance of this is brought out by the fact that the new provision in the BRA allowing general use of dangerousness in pretrial release for *all* federal crimes was a major substantive change in the law of federal pretrial release. *See United States v. Himler*, 797 F.2d 156 at 158 ("the 1984 Act [BRA] marks a radical departure from former federal bail policy," which previously had allowed consideration of a defendant's dangerousness in determining pretrial release **only** where the punishment would result in death). The role of a defendant's dangerousness in pretrial release decisions for non-violent, non-dangerous, non-drug offenses should be determined by the Virgin Islands Legislature, just as it has provided for pretrial detention of persons charged with those dangerous offenses listed in 5 V.I.C. § 3504a.

145

requirement that a financial condition not be used as a means of detention, mandate that the trial judge order the release of a non-dangerous defendant, subject to the least restrictive combination of conditions, including money bail, which will reasonably assure the defendant's attendance at trial.

In a case involving the converse of the BRA factors authorizing detention, namely, no risk of flight but "danger" of recidivism, the Court of Appeals was in accord with our method of statutory construction. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) (detention before trial because of likelihood defendant charged with use of fraudulent identification will commit crimes involving the use of fraudulent identification if released is not the type of danger to person or community which will support an order of detention under BRA). The court noted that the "record before us supports a finding that there is a danger that the defendant will, if released, commit another offense of the type for which he has been previously convicted and with which he is presently charged, namely crimes involving the use of false identification." *Id.* at 159. The court then held that he could not be detained on this basis because the BRA does not authorize "pretrial detention upon proof of danger to the community other than from those offenses which will support a motion for detention." *Id.* at 160. The district court's detention order was reversed and the case remanded for the setting of bail and for the imposition of appropriate conditions on Mr. Himler's release. Thus, a federal defendant charged with a non-violent, non-capital, non-drug crime cannot be detained solely as a danger to any other person or the community, just as we here hold that a non-dangerous Virgin Islands defendant cannot be detained before trial. The respective judicial officers must set appropriate conditions for the defendant's release.

■ We agree with the requirement that the trial judge must articulate the basis for setting the conditions of release, including the reasons for imposing a certain monetary amount for bail. *See United States v. Mantecon-Zayas*, 949 F.2d at 551 (lower court required to "explain its reasons for determining that a particular requirement [was] an indispensable component of the conditions for release"). We also agree that the Government has the burden to

146

prove risk of flight by a preponderance of the evidence standard. *Accord, e.g., United States v. Himler*, 797 F.2d at 161.

$ 2,000,000 Bail as Condition of Release Is Neither Reasonable nor Within the Financial Means of Appellant

The strength of the evidence on which the trial judge based his pretrial release order of $ 2,000,000, centered on appellant's prior criminal history, his relatively brief residence on St. Thomas, his alleged statement made to the complaining witness, his community ties, including the representations of the third party custodian, and his allegedly untruthful statements. Armed with this evidence, however, even the Government recommended reducing the bail amount by 50 percent. According to the prosecutor, the court "could drop it to $ 1 million and still be within a reasonable bail under the circumstances, and under the flight issues, and under the severity, the number of years, the size of the fine and those other things that give propensity to flight." Tr. at 180.

Territorial Court judges make pretrial release determinations for non-dangerous defendants guided by the factors set forth in section 3142(g), including the nature and circumstances of the offense charged, the weight of the evidence against the person, and the history and characteristics of the defendant. After careful independent review of the trial court's refusal to reduce the monetary bail in light of these factors, while giving deference to the trial judge's factual findings, this Court concludes that the trial judge failed to fashion the least restrictive conditions, in addition to personal recognizance or unsecured appearance bond, which would reasonably assure appellant's appearance. We further find the $ 2,000,000 bail to be excessive under Terr. Ct. R. 141(a), the pretrial release provisions of the Bail Reform Act, and section 3 of the Revised Organic Act. In light of the record and the Government's own concession, this Court can find no basis upon which the trial judge could have found $ 2 million to be the minimum amount necessary to ensure appellant's presence at trial. The figure has no demonstrable relationship to the information contained in the record.

A $ 2 million bail in this case amounts to "the sub rosa use of money bond" to detain the appellant. It is the equivalent of a

straight detention order, which is not permitted for "non-danger-ous" offenses under the law of the Virgin Islands.[20] The trial court gave no explanation why house arrest with electronic monitoring, a responsible third-party custodian, and a very significantly re-duced monetary bail in the range proffered by appellant would not adequately ensure appellant's presence at trial.[21]

The issue of the criteria for the judges of the Territorial Court and the Appellate Division to apply in determining release or detention after conviction and pending decision on appeal is one of first impression. The Appellate Division is charged with the indepen-dent review of the trial judge's decision to detain or release a defendant after sentence has been imposed and until an appeal is pending, while giving deference to the trial judge's factual find-ings. This independent review represents an intermediate level of scrutiny, which is more rigorous than the abuse-of-discretion or clear-error standards, but less stringent than plenary or de novo review. *See Karpouzis v. Government of the Virgin Islands*, Crim. No. 96-257, V.I. BBS 96 Cr 157 A.DT1 (D.V.I. APP. Mar. 27, 1997); *Smalls v. Government of the Virgin Islands*, 30 V.I. 82, 83 n.1 (D.V.I: APP. 1994).

We are again confronted with the necessity of adapting provi-sions of The Bail Reform Act, 18 U.S.C. §§ 3141-3150 ["BRA"], in this instance the sections covering post-conviction release and detention, so that they harmonize with the Virgin Islands law on bail and detention. We have recognized that Territorial Court Rule 141 governs the setting of bail before conviction and requires the

---

[20] The Territorial Court may wish to consider the condition of the St. Thomas jail in setting appropriate conditions of release for non-dangerous offenders. The Trial Division of the . District Court has recently held that "the conditions at the [St. Thomas jail facilities at the Criminal Justice Complex] presently do not meet minimal, constitutional standards . . . [and] that subjecting [Criminal Justice Complex] prisoners — both pre-trial detainees and sentenced inmates — to the currently unremedied conditions at the [Criminal Justice Complex] violates their rights under the Eighth and Fourteenth Amendments to the Constitution." *Carty v. Farrelly*, _____ F. Supp. _____ , 1997 WL 49943, *2 (D.V.I. Jan. 29, 1997) (holding the Governor, the Acting Director of the Bureau of Corrections, the Warden and the Assistant Warden of the Criminal Justice Complex, the Attorney General, and the Bureau of Corrections, in contempt of court for failing to comply with orders entered to enforce a settlement agreement between the parties).

[21] Out-of-territory assets may be available as additional collateral and use of a bail-bondsman may be advantageous, given the request for a 10% provision.

trial judge to be guided by the BRA in determining the conditions for pretrial release of a non-dangerous defendant. *Karpouzis v. Government of the Virgin Islands*, Crim. No. 96-257, V.I. BBS 96 Cᴿ 157 A.DT1. In arriving at this decision, this Court was required to parse the BRA to eliminate those provisions allowing pretrial detention in conflict with the substantive law of the Virgin Islands, which limits detention before conviction to certain specified dangerous offenses. This Court had already construed the provisions of V.I. Cᴏᴅᴇ Aɴɴ. tit. 5, § 3504a under which persons charged with dangerous crimes may be detained before trial. *Smalls v. Government of the Virgin Islands*, 30 V.I. at 83 n.1. For the reasons which follow, we hold that section 3143(b) of the BRA governs the determination of bail pending appeal.

The route by which the BRA becomes a source of law to be applied to post-conviction bail or detention decisions in the Territorial Court is somewhat circuitous, but, nevertheless, valid. Reviewing local law, we find that no Virgin Islands statute or Territorial Court rule provides for post-conviction release or detention, although Tᴇʀʀ. Cᴛ. R. 176 provides that appeals "shall be taken in accordance with Rule 76.1, Rules of Practice in the Appellate Division," Local Rules of Civil Procedure of the District Court. We are in turn directed by LRCi 76.1 to the Federal Rules of Appellate Procedure, Rule 9(c) of which makes applicable the relevant provisions of the BRA. *Accord, Schindel v. Cummings*, 18 V.I. 647, 649 (3d Cir. 1981). Since there is no Virgin Islands rule or statute on post-conviction bail or detention with which the BRA might conflict, it is appropriate to adopt those portions of section 3143 which are in harmony with the pretrial bail and detention provisions of Tᴇʀʀ. Cᴛ. R. 141(a) and 5 V.I.C. § 3504a. As we shall see, the net result is that a person convicted of a non-dangerous offense under Virgin Islands law may be released on bail and a person convicted of a dangerous offense must be detained, which is in harmony with our decisions in *Karpouzis* and *Smalls*.

## CONCLUSION

Since we find it to be excessive and unreasonable, we vacate the $ 2,000,000 bail and remand the matter to the Territorial Court to forthwith set a reasonable conditions of release consistent with the standards stated in this Opinion.

149

## ORDER OF THE COURT

PER CURIAM

AND NOW, this 27th day of March, 1997, having considered the submissions and arguments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the Territorial Court's Order dated November 5, 1996 is VACATED, and the matter is REMANDED to the Territorial court for further proceedings consistent with this opinion; and

IT IS FURTHER ORDERED that the mandate in this matter shall enter forthwith.

VACATED and REMANDED.