**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**ROBERT CAMACHO, Defendant**

Criminal No. F403/2005

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 30, 2005

ERNEST BASON, ESQUIRE, Assistant Attorney General, Department of Justice, St. Thomas, U.S. Virgin Islands, *Attorney for Plaintiff.*

SHARMANE DAVIS-BRATHWAITE, ESQUIRE, Law Offices of Hymes and Zebedee, St. Thomas, U.S. Virgin Islands, *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM AND OPINION

(November 30, 2005)

### INTRODUCTION

THIS MATTER came on for "Advice of Rights" Hearing on September 30, 2005. Defendant was charged with "Obtaining Money by False Pretenses;" "Grand Larceny;" "Fraudulent Claims Against the Government" and "Embezzlement," in violation of Title 14 V.I.C. §§ 834, 1083, 843 and 1093 respectively. After finding probable cause to believe Defendant had committed the offenses charged, the Court

advised him of his constitutional rights, determined him to be a substantial risk of flight and danger to the community and set his bail pending trial in the amount of $300,000.00 Surety Bond. Based upon the reasons set forth below, the Court determined that this was the least restrictive condition reasonably necessary to assure his appearance at trial.

## FACTUAL BACKGROUND

The Defendant, Mr. Robert Camacho, worked as a paid informant for the Virgin Islands Narcotic Strike Force (NSF) at least from on or about April 3, 1996 to the present. In that capacity, he allegedly provided false information to primarily two NSF Agents i.e. Carl Charleswell and Walter Freeman, who thereafter obtained warrants from the Court for the arrest of numerous innocent individuals.

Defendant's *modus operandi* essentially involved his identifying someone in the community as a "drug/arms dealer" to the NSF Agents. Defendant would then recruit an accomplice to pose as the alleged "dealer," supply him with his own contraband and arrange a controlled purchase of the contraband from his accomplice with money supplied by the NSF Agents. With the agents nearby monitoring the transaction, Defendant would then meet his accomplice at a pre-arranged place (usually the Tutu Park Mall's parking lot) and obtain the contraband from his accomplice in exchange for monies provided by the NSF Agents. Defendant would then deliver the contraband to the Agents at the scene and identify the alleged "dealer" rather than his accomplice as the person who sold him the contraband. Even though present and in close proximity recording the alleged transaction, the Agents never arrested the "dealer" at the scene. Rather, they sought and obtained a warrant for the arrest of the "dealer" based solely on Defendant's false identification, sometimes months after the "deal" occurred. This scheme resulted in the arrest of at least fourteen (14) innocent individuals in the following cases: (1) *Government of the Virgin Islands* vs. *Gleason Thompson,* Criminal No. F180/2005; (2) *Government of the Virgin Islands* vs. *Valentine Govia, Jr.,* Criminal No. F181/2005; (3) *Government of the Virgin Islands* vs. *Troy Willocks,* Criminal No. F186/2005; (4) *Government of the Virgin Islands* vs. *Frankie Ireland,* Criminal No. F187/2005; (5) *Government of the Virgin Islands* vs. *Nathaniel Richardson,* Criminal No. F188/2005; (6) *Government of the Virgin*

305

*Islands* vs. *Richard Henderson,* Criminal No. F191/2005; (7) *Government of the Virgin Islands* vs. *Llewellyn Lewis,* Criminal No. F192/2005; (8) *Government of the Virgin Islands* vs. *Valentine Govia, Sr.,* Criminal No. F194/2005; (9) *Government of the Virgin Islands* vs. *Wayne Weatherill,* Criminal No. F197/2005; (10) *Government of the Virgin Islands* vs. *Keith Francis,* Criminal No. F198/2005; (11) *Government of the Virgin Islands* vs. *Garfield Reid,* Criminal No. F203/2005; (12) *Government of the Virgin Islands* vs. *Kevin Charles,* Criminal No. F209/2005; (13) *People of the Virgin Islands* vs. *Kishawn Heyliger;* Criminal No. F313/2005 and (14) *Government of the Virgin Islands* v. *Cynthia King,* Criminal No. F20/1992 (District Court).

The Court was aware of several of these cases at the time of Mr. Camacho's arrest. Specifically, in the case of *Government* v. *Keith Francis,* F198/2005, this Court granted the Government's "Motion to Dismiss" on September 28, 2005 after it was irrefutably shown that Mr. Francis was not even on-island during the alleged drug-buy.[1] The evidently false sworn testimony of Agent Freeman that he and Agent Charleswell witnessed the crime being committed, led directly to Mr. Francis' arrest and the filing of serious charges against him i.e. "Trafficking in Cocaine" and "Possession of Cocaine with Intent to Distribute" in violation of Title 19 V.I.C. §§ 614a(a)(3)(B) and 604(a)(1) respectively. He was jailed and required to post $7,500.00 or 10% of his $75,000.00 bail before being able to submit airline and medical receipts proving that he was in the state of Florida at the time he allegedly committed the offense.

Also pending before the undersigned at the time of Defendant's arrest were the Government's "Motion to Dismiss Without Prejudice" in the cases against Valentine Govia, Jr., Troy Willocks, Valentine Govia, Sr., and Kishaun Heyliger. The Motions were all based on the same reason posited in support of the Motion in *Francis, supra.* On October 5, 2005, this Court granted all of the Motions and dismissed the cases with prejudice.

In the case of Mr. Valentine Govia Sr., Mr. Camacho told the NSF Agents that a "drug dealer" would be contacting him via telephone to set

---

[1] According to the affirmation by Assistant Attorney General Lofton P. Holder in support of the Motion, it was "determined that the Government cannot prove these matters beyond a reasonable doubt."

up a deal. The Agents recorded the telephone conversation and video-recorded the alleged transaction. Fatal to the case of Mr. Govia, Sr., however, was that the recorded voice was not his. Additionally, the video camera recordings showed Mr. Camacho and someone other than Mr. Govia, Sr., engaged in the transaction.

The Government allegedly became aware of Defendant's scheme during trial of the case of *Government of the Virgin Islands* vs. *Llewellyn Lewis* on September 20, 2005. In that case, the Government had charged Mr. Lewis with two (2) Counts of "Trafficking in Cocaine" and two (2) Counts of "Possession with intent to Distribute Cocaine" as a result of "transactions" which occurred on August 29, 2002, and October 1, 2002. Mr. Lewis testified that Mr. Camacho offered him $3,000.00 if he would help him "rip off" a drug dealer. All Mr. Lewis had to do was call Mr. Camacho using the name "Verne" and pretend to be arranging a drug deal at Tutu Park Mall. Mr. Lewis did so and the NSF Agents recorded the telephone call. Thereafter, Mr. Lewis followed Mr. Camacho's directions, went to the location and exchanged baking soda in plastic bags for $1,400.00. Knowing that NSF Agents had videotaped the affair, Mr. Camacho allegedly returned to them with real bags of cocaine. Mr. Camacho later met Mr. Lewis to collect the $1,400.00. He gave Mr. Lewis his $300.00 "fee" and kept the other $1,100.00 for himself.

Based upon Mr. Lewis' testimony, the Government entered into a plea agreement whereby, in exchange for his plea of "Guilty" to "Petit Larceny," the Government dismissed the drug offenses with which he was charged and obtained his assistance in prosecuting Mr. Camacho.

Similarly, in *Government of the Virgin Islands* vs. *Edward Henderson*, F191/2005, a second trial involving a controlled drug buy arranged by Mr. Camacho, the Court granted Mr. Henderson's Rule 29 "Motion for Judgment of Acquittal" at the close of the Government's case-in-chief.

On September 29, 2005, a warrant was issued for Defendant's arrest on the charges herein based upon the affidavit of Agent Charleswell. He was arrested that same day and his bail was set at $35,000.00.[2] Having determined that a Surety Bond was appropriate to assure his appearance

---

[2]    This bail was set by the arresting officer prior to Defendant's first appearance before a judicial officer based upon a schedule at the Police Station provided by the Court. As is made clear herein, pursuant to the Bail Reform Act, this bail was not binding on the Court when Defendant appeared before the undersigned.

at trial, the Court conditioned his pre-trial release upon the posting of a Surety Bond in the amount of $300,000.00.

## DISCUSSION

### I. Applicable Law

Rule 141 of the Rules of the Superior Court provides that:

> (b) Whenever a person charged with an offense is before a Judge of this Court for release on bail prior to trial, pursuant to these Rules, the Judge shall, in considering the release of such person, be guided by and apply the appropriate provisions of "the Bail Reform Act" Public Law 94-473, October 12, 1984, 18 U.S.C. Secs. 3141-3156 (1985), which Act is by this reference incorporated into and made a part of these Rules.

■ "The purpose of bail is to ensure the Defendant's appearance and submission to the judgment of the Court." *Bandy vs. United States*, 81 S. Ct. 197, 5 L. Ed. 2d 218 (1960) citing *Reynolds vs. United States*, 80 S. Ct. 30, 32, 4 L. Ed 2d 46 (1959).

■ Consistent with this purpose, it is indisputable that upon a person's first appearance before a Judicial Officer after having been arrested and charged, the Judicial Officer, after finding probable cause to believe the person did commit the crime(s), is mandated by the Act to release the person on his/her personal recognizance or upon the posting of an unsecured bond pending trial unless the person poses a risk of flight or danger to the community. *See,* Title 18 U.S.C. § 3142(a). Only if the judicial officer determines that the person's release on his/her personal recognizance or unsecured bond will not reasonably assure the person's appearance at trial, then the judicial officer is mandated to consider the person's release on certain conditions or a combination of conditions. Specifically, subsections (b) and (c) provide that:

> (b) The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond ... unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

(c)(1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

> (A) subject to the condition that the person not commit a Federal ... crime ... during the period of release; and
>
> (B) subject to the **least restrictive further condition or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—**
>
> ...
>
> > (xii) Execute a bail bond with solvent sureties ... (emphasis added).

Based upon the record, the Court determined that in this case, Defendant was not eligible for release on either his personal recognizance or upon his execution of an unsecured appearance bond pursuant to Title 18 U.S.C. § 3142(b) because such release would not have reasonably assured his appearance for trial or the safety of other persons in the community.

### a. Risk of Flight

██ Because the primary purpose of bail is to assure the Defendant's appearance at trial, determining the flight risk of the Defendant is the most important factor in setting bail where the offense or offenses charged are statutorily non-dangerous. *Karpouzis v. Government*, 961 F. Supp. 841, 843, 36 V.I. 132; *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986).

██ Defendant was born on St. Thomas on April 6, 1972. He has lived here most of his life. His family lives here and he is unemployed. Three (3) of the four (4) offenses with which [he is] charged each carry a maximum penalty of ten (10) years. It is settled that where, as here, Defendant faces a lengthy sentence if convicted, the risk of flight is present. *United States v. Hollender*, 162 F. Supp. 2d 261, 264 (S.D.N.Y.

2001) ("[Defendant] is a young man looking at the possibility of spending the most productive years of his life in [ ] prison.") Moreover, even though Defendant is presently charged with offenses based upon his conduct in one (1) case, in light of the several dismissals since the "Advice of Rights" Hearing and other potential dismissals, he could very well face additional charges, thus being exposed to even greater punishment.[3]

Additionally, according to the National Crime Information Center (N.C.I.C.), Defendant has used at least nine (9) aliases and three (3) different Social Security numbers, thereby suggesting his tendency towards deception, falsification and subterfuge. The use of false identification/aliases and Social Security numbers leads to an inference that Defendant may evade Government detection if he attempted to flee. *See,* e.g. *U.S. v. Hollender, supra* at 265-66. Furthermore, by knowingly, willfully and deliberately causing numerous individuals to, *inter alia:* (1) be falsely accused of serious offenses, (2) be arrested and charged for same; (3) suffer injury to their reputations; (4) be deprived of their liberty; (5) endure considerable financial hardship by having to post substantial bail for their release pending trial and (6) have arrest records that could follow them for the rest of their lives, thereby irreparably affecting their right to earn a livelihood, defendant's very life might be in danger because of the irreparable harm he has caused these individuals. The possibility of revenge and retaliation against him by these individuals cannot be ignored, thus providing an incentive for him to flee the jurisdiction to protect himself from serious bodily injury or death.

⬛ Based upon the foregoing, it is clear that despite his ties to the community, defendant poses a serious risk of flight, thus his release on his personal recognizance or upon an unsecured bond would not reasonably assure his appearance at trial.

### b. Danger to the Community

Even though the Court is only required to consider whether Defendant is a flight risk or danger to the community in deciding whether to release him on his personal recognizance,[4] the Court notes that Defendant also

---

[3] On December 1, 2005, Defendant was arraigned in Criminal Case Nos. F498 and F499/2005 on similar charges as in the case at bar, presumably emanating from the dismissal of other cases heretofore mentioned.

[4] Title 18 U.S.C. § 3142(b).

poses a serious danger to all persons in the community. Specifically, as noted heretofore, the scheme engaged in by Defendant to defraud the Government resulted in the arrest and charging of numerous innocent persons with serious crimes involving severe criminal penalties. As a direct result of his scheme, these persons were not only wrongfully deprived of their liberty but were put to severe financial hardship and suffered and will continue to suffer damage to their business and personal reputations.

■ Releasing such a person into the community without conditions is a threat to all members of the community who stand to be similarly falsely accused and charged with serious crimes. The danger to the community is thus real. As with his risk of flight, Defendant's ability to ensnare innocent persons into his web of deception for his financial gain and at great peril to them renders him capable of "endanger[ing] the safety of any other person or the community." Being a serious danger to the community therefore militates against releasing Defendant pursuant to Title 18 U.S.C. § 3142(b) without conditions.

## II. Release on Condition: Factors to be Considered

■ Having determined that Defendant is not eligible for release pursuant to Title 18 U.S.C. § 3142(b), the Court was required to Order his pre-trial release subject to the least restrictive condition or combination of conditions set forth in Title 18 U.S.C. § 3142(c). In making that determination, the Bail Reform Act requires the Court to consider the following factors: [1] "the nature and circumstances of the offense charged;" [2] "the weight of the evidence against the person;" [3] "the history and characteristics of the person;" [4] "the nature and seriousness of the danger to any person or the community that would be posed by the release." Title 18 U.S.C. § 3142(g). The weight to be accorded each factor rests in the Court's discretion. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S. Ct. 1, 4, 96 L. Ed. 3 (1951). *See also, United States v. Hollender, supra*, at 264.

### a. Nature and Circumstance of the crimes charged

■ The Government charged Defendant with only four (4) Counts stemming from one incident.[5] In determining the seriousness of the

---

[5]    *See,* page 1, *infra.*

311

crimes, the Court can look to many factors, including the applicable Statute of Limitations. The Virgin Islands' Legislature determined the crime of "Embezzlement" to be such a serious offense that, like the crime of "Murder," it set no time limit for charging that crime. *See,* Title 5 V.I.C. § 3541(a)(1). Though only one (1) Count of "Embezzlement" is currently charged, the crime is clearly one of a serious nature and, as noted heretofore, other Counts of the crime could be charged later. Additionally, Defendant is adept at evading the Government. He allegedly carried out the crimes with such deception that, even though he was a Confidential Informant for the Government, the Narcotics Strike Force Agents only apparently realized he was committing crimes against the Government when he perjured himself on the stand in the *Llewelyn Lewis* case, *supra.* Thus, the nature of the crimes charged—the degree of seriousness and cloak of deception—militates in favor of Defendant's conditional release.

### b. Weight of the Evidence Against Defendant

Also militating in favor of Defendant's conditional release is the weight of the evidence tending to prove his guilt. This is the "least important [prong because] the bail statute [does not] permit a pretrial determination of guilt." *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991); *see also,* Title 18 U.S.C. § 3142(j). While his innocence is of course presumed, the Court cannot ignore the growing evidence against him, which suggests that he could be convicted of serious crimes resulting in severe sentences. Specifically, in the case of Mr. Keith Francis, the irrefutable alibi evidence weighs against Defendant. In the case of Mr. Valentine Govia, Sr., the recorded telephone conversations and surveillance videotape tend to reveal that Mr. Camacho willfully and falsely identified Mr. Govia, Sr., as a drug dealer. Additionally, the significance of the Government having filed for dismissal on its own volition in so many of its cases where Mr. Camacho was the key witness cannot go unnoticed by this Court. Clearly, the weight of the evidence against Defendant militates in favor of his conditional release.

### c. History and Character of Defendant

In determining the history and character of Defendant, the Court may look to the Defendant's family ties to the community, employment, his criminal record, his mental and physical condition, financial

312

resources, etc. Title 18 U.S.C. § 3142(g)(3); *see also, United States v. Alvarez,* 548 F. Supp. 791, 793 (S.D. Fla. 1982) (finding a high risk of flight despite Defendant's close ties to the community and having no prior criminal record).

▆ Defendant has strong family ties to the community as he was born on St. Thomas and resided in this community most of his life. However, all other factors pertaining to his history and character tend towards releasing him only with conditions. Born in 1972, he is young and able-bodied, a factor considered in *Hollender, supra.* Under the circumstances, he is not likely to return to his employment as a paid confidential informant. He has had nearly a half-dozen arrests and at least one conviction. As noted heretofore, the N.C.I.C.'s Report on him shows that he has nine (9) aliases and three (3) Social Security numbers. Accordingly, Defendant's history and character also tend to favor his conditional release.

**d. The Nature and Seriousness of Danger to Any Person or the Community Posed by Defendant's Release**

▆ "Dangerousness" must be considered when a judicial officer determines conditions for pretrial release. *United States v. Himler,* 797 F.2d 156, 159 (3d Cir. 1986) ("Under the new statute, (Bail Reform Act), judicial officers must now consider danger to the community in all cases in setting conditions of release.") *See also, United States v. Giordano,* 370 F. Supp. 2d 1256, 1269 (S.D. Fla. 2005); *United States v. Miller,* 625 F. Supp. 513, 516 (D. Kan. 1985.) The pertinent section of the Bail Reform Act is replete with the necessity for the judicial officer to conduct a "dangerousness" analysis in setting conditions for bail. *See,* Title 18 U.S.C. §§ 3142(b), (c)(1), (c)(1)(B), (c)(1)(B)(i), (xiv). In *Karpouzis, supra,* the Court noted that "[d]angerousness to others and the community is not a factor to be considered in setting pretrial release conditions for persons charged with nondangerous crimes." *Id.* at 850 n.19. That pronouncement, however cannot reasonably be read to have that meaning when the governing provisions of Title 18 U.S.C. § 3142 are replete with the necessity of determining the Defendant's danger to the community. Additionally, *Himler, supra,* so heavily relied upon by the Court in *Karpouzis,* requires consideration of "dangerousness" for all cases, no matter the type of offense, when setting conditions for release. *Himler, supra* at 159. Thus "dangerousness" is not only a proper factor to

313

consider when determining pretrial release but it is a requirement of Rule 141 of the Rules of the Superior Court which explicitly incorporates Title 18 U.S.C. §§ 3142(b)(c) and 3142(g)(4) as a Rule of the Court.

### III. Defendant's Release on a Surety Bond

█ Surety Bonds have their genesis in the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused. *Boyle, supra*, 342 U.S. at 5. The Supreme Court has also noted that setting an amount of bail which properly served the purpose of assuring the defendant's appearance at trial must be based on standards to be applied on a case by case basis. *Id.* The four (4) factors set forth in Title 18 U.S.C. § 3142(g) embody the standards contemplated by *Boyle*. When applied to this case, these factors militate in favor of Defendant's conditional release. Given the circumstances of this case, Defendant's risk of flight and danger to the community, the Court is persuaded that, pursuant to Title 18 U.S.C. § 3142(c)(1)(B)(xii), a Surety Bond in the amount set is a reasonable and appropriate condition to assure Defendant's appearance for trial. Specifically, the Court is convinced that Defendant's appearance at trial can only be assured by other individual(s) guaranteeing his appearance at trial as a condition of his release.

### Conclusion

For all of the forgoing reasons, Defendant's release pending trial will be conditioned upon his posting a Surety Bond in the amount of $300,000.00.