**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JOEL B. DOWDYE (D.O.B.: 12/08/67) Defendant**

Criminal No. ST-06-CR-0000128

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

October 12, 2006

45

WILSON CAMPBELL, ESQ., Assistant Attorney General, V.I. Department of Justice, St. Croix, Virgin Islands, *Attorney for the Plaintiff.*

STEPHEN A. BRUSCH, ESQ., The Brusch Law Firm, St. Thomas, Virgin Islands, *Attorney for the Defendant.*

HOLLAR, *Judge*

**CORRECTED MEMORANDUM OPINION**

(October 12, 2006)

## I. INTRODUCTION

This matter came before the Court on June 12, 2006, for a Hearing regarding *inter alia* the applicability of the bail exception provision set forth within § 3 of the Revised Organic Act of 1954, as amended, more specifically, whether the defendant, Joel B. Dowdye, [hereinafter "the Defendant" or "Dowdye"], charged *inter alia* with first degree murder, must be denied bail pursuant to the applicable language contained within § 3, Rights and Prohibitions, as codified in Title 48 U.S.C. § 1561.[1] For the reasons that follow, bail is **DENIED.**

## II. FACTUAL AND PROCEDURAL HISTORY

On Saturday morning, March 25, 2006, on St. Thomas, United States Virgin Islands, a double shooting occurred in Room 43 of the Bunker Hill Guest House, resulting in the death of Sherett James [hereinafter "James"] and the serious bodily injury of Daren Stevens [hereinafter "Stevens" or "Bogo"]. On Friday, March 31, 2006, during the subsequent homicide investigation, Stevens told Virgin Islands Police Detective, Lionel Bess, that on Saturday, March 25, 2006, while lodging at the Bunker Hill Guest House, Room 43, he received a phone call from guesthouse personnel informing him that "Kenny" was in the lobby and was on his way up to see him. After getting out of bed and putting on his pants, Stevens said he went to the door, thinking it was his friend, Kenny Gittens. Opening the door, Stevens saw Joel Dowdye, not Kenny Gittens, standing in the doorway with a gun. Stevens shouted twice "Don't do it!", "Don't do it!", but Dowdye, undaunted, shot Stevens once in the stomach and then twice in the back while Stevens attempted to escape. Stevens fell to the ground and immediately feigned being dead. As he lay on the floor, near the bathroom, Stevens heard several more shots being

---

[1] Section 3 of the Revised Organic Act of 1953, as amended, also referred to as the "Bill of Rights", provides in pertinent part:

"All persons shall be bailable by sufficient sureties in the case of criminal offenses, **except for first degree murder** or any capital offense **when the proof is evident or the presumption is great."**

Title 48 U.S.C. § 1561, *et seq.* (1998) (emphasis added).

fired. Sherett James was the only other occupant in the room besides Dowdye and Stevens.

Detective Bess also interviewed three (3) witnesses at the crime scene immediately following the incident. The first witness stated that he/she saw a tall man walking up the stairs of the Guest House. When the witness stopped this person and asked him where he was going, the individual responded that he wanted to see "Bogo". The witness then told the individual that there was no one by that name staying at the Bunker Hill Guest House. Because the individual was so emphatic that "Bogo" was staying there, the witness returned to the office to review the registration records. His review confirmed the absence of any guest registered under the name "Bogo". Insisting nonetheless that there was such a guest staying there, the witness mentioned that among the Hotel guests was a crew from Channel 8. The individual confirmed that "Bogo" was indeed from that group.

At that point, the witness called Room 43 and inquired whether the occupant registered there went by the name "Bogo". The guest responded that he did and the witness allowed the individual to proceed upstairs towards Room 43. The witness then heard gunshots minutes later. After hearing the gunfire, the witness observed the same individual, who had inquired about "Bogo", leave the building. The witness called out to the individual, but he did not stop or respond. The witness immediately rushed to Room 43, where he observed two individuals who had been shot. The male victim repeatedly told the witness that he had been shot by "Dowdye, the Police". Later, when shown a photo array consisting of six pictures, the witness selected photo three, Joel Dowdye, as the individual who had asked about "Bogo" and the person who was later seen leaving the building after the shots had been fired.

The second witness reported that he/she had entered Room 43 after hearing gunshots and observed two individuals who had been shot. The witness first saw James lying on the floor, wrapped in a blanket, but James did not respond when the witness spoke to her. After noticing that the other individual, later identified as "Bogo" or "Daren Stevens" was still alive and conscious, the witness approached him, and Stevens also told that witness "Police Officer Dowdye did this".

The third witness stated that he/she saw *"Detective Joel"* drive down Bunker Hill in a green vehicle right before the shooting. As Dowdye approached the Bunker Hill Guest House, he slowed down. The witness

noticed Dowdye park the vehicle down the hill from the Bunker Hill Guest House and then walk back up the hill. The witness further observed Dowdye enter the Guest House. About five minutes later, the witness heard at least five gun shots and immediately thereafter noticed the green vehicle leave the scene at a high rate of speed.

Shortly thereafter, Officer Diana Brown [hereinafter "Brown"], Dowdye's ex-wife, received a cell phone call from an EMT or officer of the Virgin Islands Police Department, informing her that Dowdye was the target suspect in a double shooting that had just taken place at the Bunker Hill Guest House. Dumbfounded, in a state of shock and disbelief, Brown called Dowdye on his cell phone and asked: "What the [expletive] did you just do?" Dowdye admitted to Brown that he was involved in a "struggle" at the Bunker Hill Guest House and had shot two individuals. Additionally, Dowdye told Brown that he was going to "catch a boat", implying that he intended to flee the jurisdiction. Officer Brown advised Dowdye against doing so and ultimately persuaded him to surrender to the authorities.

Later that same day, Dowdye turned himself in to the Major Crime Unit of the Virgin Islands Police Station. He was immediately given his *Miranda* warnings. After waiving his *Miranda* rights, Dowdye confessed that he was at the Bunker Hill Guest House and was responsible for the shooting. Dowdye also stated that he was involved in a struggle with Stevens and that both Stevens and James were shot during the struggle. Detective Best discounted Dowdye's version as being implausible since Sherret James had been found on the floor, near the bed, with a blanket containing two bullet holes covering her head. It was also established that James was shot in the cheek and the back of the head, further invalidating the Defendant's "cross-fire"/"struggle" theory. Being satisfied that probable cause was established, Dowdye was placed under arrest for *inter alia,* murder in the first degree. Although it was a Saturday and not a holiday weekend, and notwithstanding posted bail schedules, the Honorable Leon A. Kendall was contacted by telephone regarding bail, after which, Dowdye was remanded to the Behavioral Unit (Psychiatric Ward) of the Roy Lester Schneider Hospital, pending his advice of rights.

Dowdye next appeared before the Honorable Audrey L. Thomas, on Monday, March 27, 2006, for advice of rights. His bail was set at Five

Hundred Thousand Dollars ($500,000.00).[2] On April 6, 2006, the Defendant appeared before the Honorable Rhys S. Hodge for arraignment. Defendant's counsel, Stephen Brusch, Esq., waived a reading of the information and entered a plea of "not guilty" on behalf of his client on all counts in the information. Count I of the information charged the defendant with First Degree Murder, in violation of Title 14 V.I. CODE ANN. §§ 921, 922(a)(1); in Count II with Using a Dangerous Weapon During the Commission of First Degree Murder, in violation of Title 14 V.I. CODE ANN. § 2251(a)(2)(B); in Count III with Second Degree Murder, in violation of Title 14 V.I. CODE ANN. §§ 921, 922(a)(2); in Count IV with Using a Dangerous Weapon During the Commission of Second Degree Murder, in violation of Title 14 V.I. CODE ANN. § 2251(a)(2)(B); in Count V with Attempted First Degree Murder, in violation of Title 14 V.I. CODE ANN. §§ 921, 922(a)(1), 331; in Count VI with Using a Dangerous Weapon During the Commission of an Attempted First Degree Murder, in violation of Title 14 V.I. CODE ANN. § 2251(a)(2)(B); in Count VII with First Degree Assault, in violation of Title 14 V.I. CODE ANN. § 295(1); in Count VII with Using a Dangerous Weapon During the Commission of a First Degree Assault, in violation of Title 14 V.I. CODE ANN. § 2251(a)(2)(B). At arraignment, the case was assigned to the Honorable Leon A. Kendall, however, he immediately recused himself. The case was then reassigned to the undersigned Judge. On March 30, 2006, counsel for the Defendant filed a *Motion For Reduction Of Bail, Or In The Alternative, To Permit The Posting Of Designated Property As Security For Bail,* petitioning the Court to reduce the bail to an amount the Defendant could afford[3] or to

---

[2] At the advice of rights proceeding, defense counsel made an oral motion requesting that the Defendant be released on bail after posting two properties with equity totalling Ninety-Five Thousand Dollars ($95,000.00). The Honorable Audrey Thomas denied the motion for reduction of bail without prejudice and ordered that Defendant Dowdye return to the Behavioral Unit of the Roy L. Schneider Hospital for further evaluation, pending arraignment. Furthermore, the Court ordered the Bureau of Corrections to refrain from sending the Defendant to the Golden Grove Correctional Facility on St. Croix but to keep the Defendant separate from other inmates at all times.
[3] At the time the Motion was filed, the Defendant asserted that he could post as security property totalling Three Hundred Twenty Thousand One Hundred Twelve Dollars ($320,112.00) with an equity of Two Hundred and Six Thousand One Hundred Twelve Dollars ($206,112.00). The Defendant requested the Court to reduce the bail to the sum of One Hundred Thousand Dollars ($100,000.00) and accept the properties submitted as security. In the alternative, the Defendant requested that the Court keep the

release him on his own recognizance, pursuant to Title 18 U.S.C. §§ 3142(b) and (c), particularly in light of the fact that the People had not moved for pre-trial detention under Title 5 V.I. CODE ANN. § 3504a(a)(1).[4] In a written Order, dated April 12, 2006, this Court denied the pending motion for release or reduction of bail, without prejudice, because almost all of the representations made to the Court by defense counsel supporting a grant of bail were "unverified" and with no indication of counsel's personal knowledge as to the representations. Moreover, the Court ruled the motion did not comply with Title 5 V.I. CODE ANN. § 699.[5] On that same date, April 12, 2006, the Defendant filed a *Notice of Additional Property,* which increased the total equity of the properties submitted for security of bail to Two Hundred Thirty Thousand Three Hundred Seventeen Dollars ($230,317.00).

In a written Order dated April 24, 2006, the Court notified the Defendant that the ruling set forth in the Court's April 12, 2006 Order remained in full force and effect. On the same date, April 24, 2006, the Defendant filed a *Renewed Motion For Reduction Of Bail, Or In The Alternative, To Permit The Posting of Designated Property,* providing the Court with the required Affidavit and documentation to verify the representations contained within the Defendant's original bail reduction motion dated March 30, 2006.

---

bail set at Five Hundred Thousand Dollars ($500,000.00), but accept the properties submitted as sufficient securities.

[4] Pursuant to Title 5 V.I. CODE ANN. § 3504a(a)(1), prior to trial, if the People certify by motion that based on the person's pattern of behavior consisting of his past and present conduct, the nature and circumstances of the offense charged, the weight of the evidence presented, his family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution or failure to appear at court proceedings, there is no one condition or combination of conditions which will reasonably assure the safety of the community or...that the person charged will appear for trial, and the person charged with one or more of the dangerous crimes listed, the defendant may be detained without bail.

[5] Title 5 V.I. CODE ANN. § 699 provides:

**§ 699 Affirmation of truth of statement by attorney**
The statement of an attorney authorized by law and admitted to practice in the Courts of the Virgin Islands, who is not a party to the action, when subscribed and affirmed by him to be true under the penalties of perjury, may be served or file in an action in lieu of and with the same force and effect as an affidavit duly notarized. Added Feb. 11, 1986, No. 5143, § 2, Sess. L. 1986, p. 24.

By Order dated May 2, 2006, the Court granted the Defendant's motion and ordered the bail reduced to Two Hundred Thirty Thousand Dollars ($230,000.00), and if property was posted as security, the equitable value would not be further reduced by one half. In addition, the Court imposed other restrictive release requirements.[6] On May 5, 2006, the People filed a motion for pretrial detention based on witness intimidation, danger to the community and risk of flight, or in the alternative, to increase the Defendant's bail pursuant to Title 5 V.I. CODE ANN. § 3504a(b)(1). In a written Order dated May 9, 2006, the Court scheduled a pretrial detention hearing for May 15, 2006, and stayed the Court's May 2, 2006 Order granting the Defendant's motion to reduce bail.[7]

On May 10, 2006, the day after the Court scheduled the detention hearing, the People filed a motion for a fourteen (14) day continuance, citing the unavailability of several witnesses. In a written Order dated May 11, 2006, the Court denied the People's motion for pretrial detention without prejudice because the People were admittedly unable to meet the statutory requirement that the detention hearing take place *immediately* upon the person being brought before the court unless a continuance is granted, and that <u>any continuance regarding a pre-trial detention hearing shall not exceed three (3) calendar days</u>.[8] As a result, the Court reinstated its May 2, 2006 Order.

---

[6] Additional release conditions included: (1) assignment of Muriel Weeks, the Defendant's Aunt, as a third party custodian; (2) requiring the Defendant to reside with the third party custodian; (3) implementation of electronic monitoring; (4) house arrest at the third party custodian's residence; (5) requiring the defendant to surrender his passport; (6) requiring written Court permission for any travel from St. Thomas or the jurisdiction of the United States Virgin Islands; (7) requiring Court permission for any departure from the third party custodian's residence; and (8) prohibiting the Defendant from having any contact with the surviving victim, his family or any relatives of the deceased, *except through his counsel or an investigator hired by his attorney.*

[7] As noted in the Court's May 9, 2006 Order, the People's May 5, 2006 motion immediately made release of the Defendant impracticable because the Court may have been required to issue a warrant for defendant's re-arrest prior to the detention hearing, pursuant to Title 5 V.I. CODE ANN. § 3504a(b)(1).

[8] Pursuant to Title 5 V.I. CODE ANN. § 3504a(b)(2):

(2) **Time of hearing.** The hearing <u>shall be held immediately</u> upon the person being brought before the court unless a continuance is granted. A continuance granted on the motion of the person shall not exceed five calendar days, unless there are extenuating circumstances. A <u>continuance on the motion of (sic) the prosecuting</u>

52

On May 12, 2006, the People filed a motion in opposition to the sureties offered by the Defendant,[9] since all the sureties were properties posted by police officers, except for property posted by his aunt. In a written Order dated May 12, 2006, the Court reinstated its May 9, 2006 Order, "staying" the Defendant's motion to reduce bail and requiring counsel for the Defendant to respond to the People's challenge to the prospective police officer sureties. On May 25, 2006, the Court issued a written Order notifying the parties that it may have improvidently and impermissibly denied without prejudice the People's May 5, 2006 motion for pre-trial detention. In that Order, the Court advised the parties that it would *sua sponte* reconsider the denial of the People's original motion for pre-trial detention. Further, the Court ordered the parties to be prepared to address with supporting case law several legal issues relating to the bail provision exemption of § 3 of the Revised Organic Act of 1954, as amended. The Court then scheduled a Hearing for June 12, 2006, to consider all outstanding motions, including the People's motion for pre-trial detention, and the Defendant's motion to release. Finally, the Court advised the parties that it would conduct *inter alia* a hearing to determine whether the "proof was evident" or the "presumption great" that the Defendant committed the offense of murder in the first degree, in order to ascertain whether the Defendant could be released on bail given the mandate set forth at § 3 of the Revised Organic Act of 1954, as amended.

On June 12, 2006, the Court convened a Bail/Detention/Release Hearing addressing all of the outstanding motions. After the Hearing, Court proceeded with a scheduled pre-trial conference. The People advised the Court that a plea had been offered to the Defendant, however, the Court acknowledged that the Defendant could not reasonably consider the offer until he was made aware of the totality of the People's case against him, including the results of any outstanding DNA tests.[10] For reasons that follow, the Court rules that pursuant to § 3

---

attorney shall be granted upon good cause shown and shall not exceed three calendar days. The person may be detained pending the hearing.

[9] Title 5 V.I. CODE ANN. § 180(c) provides:

No attorney, marshal, police officer, clerk of any court, or other officer of any court shall be permitted to become bail in any action.

[10] In a written Order dated June 16, 2006, the Court scheduled a Final Pre-Trial Conference for October 25, 2006 and established deadlines for the remaining pre-trial

of the Revised Organic Act of 1954, as amended, the defendant is not entitled to bail under these circumstances.

## III. ANALYSIS

The issues before the Court for resolution are: (1) whether the bail provision exception set forth at § 3 of the Revised Organic Act of 1954, as amended, is the controlling law for determining eligibility of bail for a defendant charged with first degree murder in the Superior Court of the Virgin Islands when the "proof is evident" or the "presumption is great" that defendant committed the offense; (2) whether the "proof (elicited at the June 12, 2006 hearing) is evident" or "presumption great" that defendant, Joel Dowdye, committed the offense of first degree murder; (3) whether the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, violates the defendant, Joel Dowdye's, "Due Process" guarantees, as made applicable in the Virgin Islands through another provision in § 3 of the Revised Organic Act of 1954, as amended; (4) whether the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, violates the "Equal Protection" guarantees, as made applicable in the U.S. Virgin Islands through another provision of § 3 of the Revised Organic Act of 1954, as amended; and (5) whether the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended is "void for vagueness."

### A. The Bail Provision Exception Set Forth At Section 3 of The Revised Organic Act of 1954, As Amended, is the Controlling Law For Determining the Eligibility of Bail For A Defendant Charged With Murder in the First Degree in the Superior Court When The "Proof Is Evident" or The "Presumption Is Great" That Defendant Committed the Offense.

Counsel for the Defendant refers to the bail provision exception set forth at § 3 of the Revised Organic Act of 1954, as amended, as a

---

matters. The Court also scheduled Jury Selection for Friday, October 27, 2006 and set the Jury Trial to begin Monday, October 30, 2006. Further, October 6, 2006 was set as the deadline for any change of plea, and the Court ordered that a "Declaration" be filed no later than Tuesday, October 10, 2006, if the Defendant rejected the People's last and best plea offer. Finally, the Court ordered the People to turn over to the defense any forensic reports, medical reports, and exculpatory material no later than Wednesday, October 11, 2006.

"Neanderthal" provision which no longer has any force or effect in the Virgin Islands. Specifically, Defendant argues that § 3 was implicitly repealed by the case, *Government of the Virgin Islands v. Ortiz*, 427 F.2d 1043, 7 V.I. 521 (3d Cir. 1970). Defendant further asserts that the holding in *Ortiz, supra*, remains controlling because the 1984 Amendments to the Revised Organic Act of 1954, granted the local Virgin Islands Legislature the power to confer greater autonomy to the Territorial Court of the Virgin Islands [now the Superior Court of the Virgin Islands] and the exercise of that greater autonomy was the enactment of SUPER. CT. R. 141(b). Rule 141(b) specifically incorporated the Federal Bail Reform Act, as amended, [hereinafter "the Bail Reform Act" or "BRA"] and codified at Title 18 U.S.C. §§ 3141-3156 *et seq.*, into the Rule, allowing bail for persons charged even with murder in the first degree unless the defendant is detained by virtue of other conditions. Application, however, of the *Ortiz* decision post the 1984 Amendments to any defendant charged with first degree murder in the Superior Court of the Virgin Islands is misplaced.

### 1. Historical Context

Petitions for bail made in the Superior Court of the Virgin Islands by a defendant charged with first degree murder pursuant to local statute present a unique and fascinating perspective on the complex interaction between federal and local law as related to the inherent rule making authority of the Superior Court of the Virgin Islands. Although the issue regarding the availability of bail to a defendant charged with first degree murder or any capital offense when the "proof is evident" or the "presumption great" is not *historically* a matter of first impression in the courts of the Territory or the United States Court of Appeals for the Third Circuit, the Superior Court of the Virgin Islands must nevertheless revisit the issue in light of the subsequent intentional and purposeful changes made to the Revised Organic Act since the District Court of the Virgin Islands and the U.S. Court of Appeals for the Third Circuit last addressed the issue. For clarity, a historical time-line, as follows is instructive.

55

## a. The Organic Act(s) of the U.S. Virgin Islands

The United States Congress, pursuant to Article IV, § 3, Clause 2 of the United States Constitution,[11] has plenary power over all United States' Territories, including the Virgin Islands. *In re Application of Moorhead*, 27 V.I. 74, 78-79 (Terr. Ct. 1992). This power was first exercised through and embodied in congressional legislation specific to the Virgin Islands in the initial Act of March 3, 1917. *Id.* Later, this power was again exercised when the provisions of the original Organic Act were enacted on June 22, 1936, and subsequently amended on July 22, 1954. Notably, these Organic Acts represent the "evolving" unofficial constitution of the United States Virgin Islands. Section 3 of the Revised Organic Act, as amended, contains the "Bill of Rights". Within § 3, bail is specifically addressed, and provides in pertinent part:

> "All persons shall be bailable by sufficient sureties in the case of criminal offenses, **except for first degree murder** or any capital offense **when the proof is evident or the presumption is great.**"

Title 48 U.S.C. § 1561. (emphasis added). Thus, a plain reading of the Virgin Islands' "Constitution", as it existed in 1954, requires all persons to be bailable except for a defendant charged with first degree murder or any capital offense, when the proof is evident or the presumption is great. This provision, however, was ahead of its time because in 1954, local crimes were tried in the District Court of the Virgin Islands and that Court was required by law to specifically apply the Federal Rules of Criminal Procedure and the Federal Bail Reform Act, thus superseding the provision of the 1954 Revised Organic Act as amended.[12]

---

[11] Article IV, Section 3, Clause 2 reads:

"The Congress shall have Power to dispose of and make all needful Rules and regulations respecting the Territory or other Property belonging to the United States, ..."

United States Constitution, Article IV, Section 3, Clause 2.

[12] While Title 48 U.S.C. § 1561 mandates that all persons are bailable by sufficient sureties except in cases of first degree murder or capital offenses when the proof is evident or the presumption is great, Title 18 U.S.C. 3142(f)(1)(B) mandates a hearing for similarly situated persons to determine whether any condition or combination of conditions ... will reasonably assure the appearance of such person as required and the safety of any other person or the community.

## b. The Historical Origin of the Bail Reform Act of 1966

The Bail Reform Act of 1966 is a federal statute providing that a non-capital defendant "shall ... [be] ordered released pending trial on his personal recognizance" or on personal bond unless the judicial officer determines that these incentives will not adequately assure his appearance at trial. Bail Reform Act of 1966, 18 U.S.C. § 3146 *et seq.* With its origins in medieval England, bail was first determined by local "Sheriffs", who could use any standard and weigh any factor in determining whether to release a suspect on bail, thereby resulting in widespread abuse of discretion. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006). Through a litany of subsequent laws, including the Statute of Westminster (1275),[13] Petition of Right of 1628,[14] and the Habeas Corpus Act of 1677,[15] the groundwork was laid for the subsequent bail statutes adopted by the American legal system. *Id.*

In colonial America, bail provisions were typically reflected in State Constitutions, which relied heavily on the English Bill of Rights.[16] Ultimately, the Eighth Amendment to the United States Constitution, which was taken almost verbatim from § 9 of the Virginia Constitution, set the standard for bail, providing that "Excessive bail shall not be required". *Id.* In addition, the Sixth Amendment to the United States

---

[13] This statute eliminated the discretion of the Sheriff with respect to what crimes were bailable, yet the Sheriff retained authority to determine the amount of bail and the factors used to determine release. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

[14] This Petition was in response to King Charles I, who routinely demanded loans from noblemen within his Court, and jailed them indefinitely without bail or formal charges when they refused. The Petition guaranteed that no individual could be held before trial on the basis of an unspecified accusation. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

[15] This Act provided a suspect with knowledge that the alleged offense was either bailable or not pursuant to the parameters of the Statute of Westminster. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

[16] Virginia's 1776 Constitution stated "excessive bail should not be required". This was later amended in 1785, eliminating the judge's discretion to grant bail by incorporating the following provision: "those shall be let to bail who are apprehended for any crime not punishable in life or limb ... But if a crime be punishable by life or limb, or if it be manslaughter and there be good cause to believe the party guilty thereof, he should not be admitted to bail." 12 Va. Stat. 185-86 (W. Hening ed. 1823).

Constitution insures that, when arrested, a defendant "[must] be informed of the nature and cause of the accusation". *Id.* This provision entitles a defendant to know what he is being charged with, so he may determine whether such an offense is bailable. The state and federal legislatures however ultimately define the parameters of release on bail. Federally, the parameters of release were embodied in the Judiciary Act of 1789.[17] That Act mandated that "all non-capital offenses were bailable and that in capital offenses, the decision to detain a suspect before trial was left to the determination of the judge." *Id.* The Judicial Act of 1789, however, failed to distinguish between bail determinations made before or after conviction.[18]

In 1966, Congress finally revisited the issue of bail. The Bail Reform Act of 1966, (hereinafter "BRA"), "created a presumption for releasing a suspect with as little burden as necessary in order to insure his appearance at trial." *History of Bail, supra.* Under the provisions of BRA, when determining whether to release a defendant charged with a non-capital criminal offense on personal recognizance or on personal bond, a judge was first required to determine whether certain incentives would adequately assure his appearance at trial. *Id.* Upon such determination, the judge then selected the least restrictive conditions which would assure his appearance. *Id.* Those conditions included restrictions on travel, posting of an appearance bond that was refundable upon appearance of the defendant, and execution of bail bond with sufficient solvent sureties.[19] *Id.* Thus, the appearance of the defendant for trial remained the sole standard for weighing bail decisions in pre-

---

[17] Passage of the Judiciary Act of 1789 took place the same year as the U.S. Bill of Rights was introduced.

[18] In 1946, FED R. CRIM. P. 46 made the language of the Judiciary Act of 1789 the applicable standard for determining release *prior to conviction,* but left the factors for determining *post conviction release,* release pending appeal, or release subsequent to an application for *certiorari* up to the judge's complete discretion, regardless of the nature of the crime. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

[19] In contrast, when determining conditions imposed on a defendant who is charged with a capital offense or has been convicted of such an offense and is now awaiting appeal or sentencing, courts applied a different standard, determining whether the judge has reason to believe: (1) that no conditions will reasonably assure that the person will not flee; (2) the person poses a danger to others upon release; or (3) the person poses a danger to the community. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

conviction non-capital cases.[20] In 1984, Congress made its most significant amendment to the Bail Reform Act ("BRA"), and for the first time applied the "dangerousness" standard to pre-trial detainees. The BRA now allows bail to be denied to all persons charged with serious crimes and who pose a threat of future criminal activity. *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987);[21] 18 U.S.C. § 3142(f).

### c. Appoint Conflicts Between Revised Organic Act As Amended And The Bail Reform Act, As Amended

Given the historical perspective of the bail provisions of both the Revised Organic Act of 1954, as amended, and the Bail Reform Act of 1966, as amended, the stage is set to settle any apparent resulting clash between these provisions as applied within the Virgin Islands, an unincorporated territory of the United States. On one hand, the Revised Organic Act of 1954, as amended, a federal statute, analogous to a state constitutional provision, does not permit bail for a defendant charged with first degree murder or any capital offense when the proof is evident or the presumption great. On the other hand, the Bail Reform Act of 1966, as amended, a federal statute, mandates a rebuttal presumption for

---

[20] This aspect of the Act was heavily criticized by the District of Columbia, where all crimes formally fell under the regulation of Federal bail law. As a result, in 1969, Congress changed the application of the Act as it applied to persons charged with crimes in the District of Columbia, allowing judges to determine bail by considering dangerousness to the community as well as flight risk when setting bail in non-capital cases. However, one could not be held without bail *before trial* without finding that: (1) *clear and convincing* evidence exists that defendant falls within a category of the Act authorizing detention; (2) no other release conditions assure community safety; and (3) there exists substantial probability that the suspect committed the crime for which he was arrested. *History of Bail,* Bail.com: Freedom At Your Fingertips, at http://www.bail.com/history.htm (last visited, June 7, 2006).

[21] "The [Supreme] Court found that the Act was passed in response to "the alarming problem of crimes committed by persons on release,'" and that it gave courts 'adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.' In recognizing that the threat of public danger requires courts to exercise increased discretionary authority, the Supreme Court invoked public health jurisprudence to shift the constitutional question from criminal to civil law antecedents." Quoting *United States v. Salerno,* Public Heath Law Articles at http://biotech.law.lsu.edu/cphl/articles/hastings/hastings-7_.htm (last visited June 8, 2006).

release of pre-trial defendants charged with non-capital crimes.[22] Thus, an issue as to whether the Federal provision of the Bail Reform Act of 1966, as amended, or the Federal Congressional "constitutional" provision, set forth in § 3 of the Revised Organic Act of 1954, as amended, is controlling, as applied, to bail determinations made in non federal Virgin Islands courts for persons charged with murder in the first degree when the "proof is evident" or the "presumption is great" that defendant committed the offense. In the final analysis, when resolving any conflict that may exist, "venue is outcome determinative".

### 1. Local vs. Federal Court Rules & Statutes

Originally, all legal matters, with the exception of certain municipal matters, were handled in the District Court of the Virgin Islands.[23] Significant jurisdictional changes evolved from 1917[24] to 1954. In 1936, Congress promulgated the original Organic Act of 1936, which was signed into law by President Franklin D. Roosevelt on June 22, 1936.[25] It

---

[22] Some jurisdictions do not follow the general rule that if the offense is of such character that the penalty of death may be inflicted, the offense is a capital one, finding that the "fact the penalty may be, instead of death, imprisonment for life or for a term of years, does not necessarily change the capital character of the offense, so as to entitle a person charged with such an offense to bail under a provision that all persons shall be bailable except in capital cases. 8A AM. JUR. 2D *Bail and Recognizance* § 25 (2005); *State v. Christensen*, 165 Kan. 585, 195 P.2d 592 (1948) (declined to follow on other grounds by, *In re Wick*, 233 Cal. App. 3d 516, 285 Cal. Rptr. 496, 285 Cal. Rptr. 676 (4th Dist. 1991)); *Ex parte Berry*, 198 Wash. 317, 88 P.2d 427 (1939).

[23] Prior to the formal establishment of the Territorial Court, there existed two local municipal courts that co-existed with the local "District Court". After March 1, 1965, the two municipal courts known as the Municipal Court of St. Croix and the Municipal Court of St. Thomas and St. John were consolidated into a single court designated "The Municipal Court of the Virgin Islands". Feb. 8, 1965, No. 1291, § 14, Sess. L. 1965, Pt. I., p.11. The "Municipal Court" changed its name to the "Territorial Court" through the 1976 Amendments, effective Sept 9, 1976, No. 3876, sec. 8, Sess. L. 1976, p. 198.

[24] The 1917 Act stated "local laws would remain in force and effect and 'shall be administered by civil officials and through local judicial tribunals established in said islands'...and the orders, judgments, and decrees of said judicial tribunals shall be duly enforced." Act of March 3, 1917, Ch. 171, Sec. 2, 39 Stat. 1132; June 25, 1948, Ch. 646, Sec. 39, 62 Stat. 992.

[25] This Act included the following important provision:

"... Provided, that the legislative assembly may provide for the organization and conduct of a Superior Court of the Virgin Islands and may transfer from the District Court to such Superior Court jurisdiction over any or all causes other than those arising under the laws of the United States.

was this Organic Act of 1936 that *inter alia* created the District Court of the Virgin Islands. Later, an amended Organic Act was enacted on July 22, 1954, now referred to as the Revised Organic Act of 1954.[26] The 1984 comprehensive amendments to the Revised Organic Act of 1954, drastically changed the landscape of the judicial system in the Virgin Islands of the United States.[27] The historic amendments gave the local legislature the ability to confer greater autonomy by statute to the local courts, which it chose to do, divesting the "District Court" of most of its jurisdiction over "local" matters. By 1991, the Territorial Court assumed full jurisdiction over all local civil actions pursuant to § 21 of the Revised Organic Act, as amended, and local Act No. 5594, 4 V.I. CODE ANN. § 76(a) (Bill No. 18-0362). Three years later, the Territorial Court, effective January 1, 1994, was granted original jurisdiction over *all* local criminal actions. Section 76(b)(1), as amended by Act Sept. 30, 1993, No. 5890, §§ 1, 3, Sess. L. 1993, p.214. The latest implementation of the 1984 amendments took place in 2004 when the legislature changed the name of the Territorial Court of the Virgin Islands to the Superior Court of the Virgin Islands, the name it retains today. Oct 29, 2004, No. 6687, § 1(b), Sess. L. 2004.

Given the historical backdrop, the issue regarding the local court and local legislature's authority concerning bail emerged. Significantly, it is the *timeframe, forum, and nature* of the cases prosecuted that determine the applicability of the different bail standards.

In 1970, on review, the United States Court of Appeals for the Third Circuit decided the case of *Government of the Virgin Islands v. Ortiz,*

---

Act of June 23, 1936, ch. 699, Sec. 25, 49 Stat. 1813.

[26] Title 48 U.S.C.A. § 1611(a), District Court of the Virgin Islands; local courts, as it existed in 1984, provides:

> The judicial power of the Virgin Islands shall be vested in a court of record designated the "District Court of the Virgin Islands" established by Congress, and in such appellate court and lower courts as may have been or may be established by local law.

Title 48 U.S.C.A. § 1611(a).

[27] Although the 1984 Amendments created the framework for the divestment of jurisdiction of local matters from the District Court to the local court, the Amendments did not transfer jurisdiction by their own force. Sections 21(b), 21(c) and 22(b) of the Act were not self-executing. Thus, subsequent local enactment was required to trigger their effect. *Estate Thomas Mall, Inc. v. Territorial Court,* 923 F.2d 258 (3d Cir. 1991) (holding §§ 21(c) and 22(b) are not self-executing.).

427 F.2d 1043, 7 V.I. 521 (3d Cir. 1970), holding the Federal Rules of Criminal Procedure, providing for the right to bail before conviction, superseded § 3 of the 1954 Revised Organic Act, as amended which provided for bail except in cases of first degree murder or any capital offense when the "proof is evident" or the "presumption great." Specifically, the court found the 1954 Revised Organic Act bail provision conflicted with the FED. R. CRIM. P. 46(a)(1), which "requires that '(a) a person arrested for an offense not punishable by death shall be admitted to bail,' thus making first degree murder under Virgin Islands law a bailable offense because it is not 'punishable by death.'" Quoting *Ortiz*, 427 F.2d at 1048. The Court reached this conclusion after finding that the Federal Rules of Criminal Procedure applied by their own terms to criminal offenses charged in the District Court of the Virgin Islands,[28] *Government of the Virgin Islands v. Solis*, 334 F.2d 517, 519, 4 V.I. 615 (3d Cir. 1964), and that Congress had previously provided in the enabling act that "all laws in conflict therewith shall be of no further force and effect," 18 U.S.C. § 3771 (Supp. IV, 1969). *Ergo*, the Third Circuit, exercising its supervisory powers, required that the standards and procedures of the Bail Reform Act be adopted and followed in the consideration and disposition of bail applications in the District Court of the Virgin Islands.[29] *Ortiz*, 427 F.2d at 1048.

Distinguishing *Ortiz* from the case *sub judice, Ortiz* made the Bail Reform Act of 1966 applicable to defendants charged with first degree murder under local statute **only *in the District Court of the Virgin Islands.*** Significantly, *Ortiz* was decided ***before*** the 1984 Amendments to the Revised Organic Act of 1954. The 1984 amendments to the Revised organic Act of 1954 permitted the local legislature and the local courts the option of promulgating its own rules and procedures

---

[28] In 1970, all major criminal matters were handled in the local District Court. Even though *Ortiz* was charged under local statute (Title 14 V.I. CODE ANN. § 922(a)(1) (1964)), the Federal Rules of Criminal Procedure were still applicable to his case in the District Court of the Virgin Islands instead of § 3 of the Revised Organic Act of 1954, as amended. *Government of the Virgin Islands v. Solis*, 334 F.2d 517, 519, 4 V.I. 615 (3d Cir. 1964).

[29] On June 9, 1970, the same day *Ortiz* was decided, the Third Circuit Court of Appeals issued its decision in *Government of the Virgin Islands v. Bolones*, 427 F.2d 1135, 1137, 7 V.I. 516 (3d Cir. 1970), holding the Bail Reform Act of 1966 is applicable to first degree murder cases **in the District Court of the Virgin Islands.** (Emphasis Provided).

applicable to the local courts it established within the Virgin Islands pursuant to Rule 21(c) of the Revised Organic Act of 1954, as amended.[30]

## 2. Post Ortiz cases

In 1992, the Territorial Court decided the benchmark case, *In re Application of Moorhead*, 27 V.I. 74 (Terr. Ct. 1992). In that case, the Territorial Court, *for the first time,* exercised its extended jurisdiction pursuant to § 21(b)(c) of the Revised Organic Act, as amended in 1984 under local statute and held that the Territorial Court, not the District Court, had the power to admit attorneys to the Virgin Islands Bar. Although civil in nature, the court's holding in *In re Moorehead* has implications on the current issue before the Court. Central to that Court's ruling was the determination that the 1984 Amendments to the Revised Organic Act of 1954, as amended, divested the District Court of its power to admit attorneys to practice before local courts by repealing former § 23 and enacting a new § 21(c) providing for the vesting of that jurisdiction in the local courts:

> "The *rules governing the practice and procedure of the courts established by local law* and those prescribing the qualifications and duties of the judges and officers thereof, oaths and bonds, and the times and places of holding court shall be governed by local law or the rules promulgated by those courts."

Act of Oct. 5, 1984, Pub L. 98-454, Title VII, Sec. 702, 98 Stat. 1737. The *Moorehead* Court further ruled that § 21(c) remained dormant, see *Estate Thomas Mall, Inc. v. Territorial Court*, 923 F.2d 258 (3d Cir. 1991), until the local legislature enacted, Act No. 5594, on September 5, 1990, which vested jurisdiction over all local civil actions in the Territorial Court, effective October 1, 1991.[31] As of October 1, 1991, the

---

[30] It is noteworthy that Congress did not repeal the bail exception provision of § 3 of the Revised Organic Act of 1954 when it enacted the 1984 Amendment. As a result, the bail exception provision in the Revised Organic Act of 1954 regained its validity, and viability and is restored full applicability in the local courts (Superior Court of the Virgin Islands).

[31] Many parallels may be drawn to the issue before the Court. Section 21(c) authorizes local rules to determine the procedures in local courts. Bail is a matter of procedure in local courts. Once the legislature, in 1994, officially transferred original jurisdiction of all local criminal matters to the Territorial Court, § 21(c) took effect, and all procedural rules

Territorial Court, not the District Court, had the authority to promulgate the rules governing the procedures of civil matters brought in the Territorial Court, including admission of attorneys to the Virgin Islands Bar.

In *Smalls v. Government of the Virgin Islands*, 30 V.I. 82 (D.V.I. App. 1994), the District Court, on appeal, sustained the trial court's application of both the local bail detention statute, Title 5 V.I. CODE ANN. § 3504a, and the Bail Reform Act of 1984, to a defendant charged with first degree murder. The court further held that the local bail detention statute governs prosecutions in the Territorial Court. That ruling, however, was improvidently rendered inasmuch as the Court failed to recognize that the local bail statute was at variance, in part, with the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended.[32] Further, the Court applied the local statute's release conditions to first degree murder, an offense specifically addressed in § 3 of the Revised Organic Act of 1954, as amended. The bail provision in the Revised Organic Act of 1954, as amended, being "constitutional" in nature, preempts the local statute, except if proof is not evident or presumption is not great that defendant committed murder in the first degree. This conclusion is valid notwithstanding the *Ortiz* decision because the *forum* of the offense in *Smalls* was the Territorial Court and not the District Court.[33] In 1994, the Revised Organic Act of 1954 had been implemented to include the sweeping 1984 Amendments, which authorized the local legislature to confer expanded jurisdiction on the Territorial Court. The 1984 Amendments were not self-executing. See discussion in fn.30, *supra*. Thus, local legislation, effective January 1, 1994, codified the transfer of original jurisdiction for *all* criminal matters, subject to concurrent jurisdiction with the District Court, to the

---

governing bail in the Territorial Court, specifically SUPER. CT. RULE 141, which arguably gives deference to the bail provision exemption of § 3 of the Revised Organic Act of 1954, as amended, took full effect, and supersedes any federal rule applicable in the District Court.

[32] The issue regarding the applicability of § 3 of the 1954 Revised Organic Act, as amended, was never raised on this appeal or at the trial level.

[33] The Court recognizes that *Ortiz* is still good law but only to the extent a prosecution for murder in the first degree is brought in the District Court.

Territorial Court.[34] A *fortiari,* the holding in *Ortiz* was not controlling in *Smalls* or controlling in the case *sub judice.*

In *Government of the Virgin Islands v. Thomas,* 32 V.I. 64 (Terr. Ct. 1995), the Court addressed whether first degree assault was a detainable offense in the Territorial Court. The Government argued that defendant, who was arrested and charged with first degree assault and related weapons offenses pursuant to Virgin Islands law, may be detained since first degree assault is a crime of violence and detainable pursuant to the Bail Reform Act of 1984, as amended. *Thomas,* 32 V.I. at 65. The Government further contended that the defendant could be detained as well on an obstruction of justice charge pursuant to the local bail detention statute, Title 5 V.I. CODE ANN. § 3504a(a)(2). *Id.* The defendant countered that he was not detainable and must be granted bail pursuant to Territorial Court Rule 141(a) because: (1) consistent with Territorial Court Rule 7, 5 V.I. CODE ANN. § 3504a(a) (the local detention statute) is the controlling statute regarding eligibility for detention since that provision is inconsistent with 18 U.S.C. 3142(f)(1); (2) none of the offenses with which defendant is charged is a detainable offense under Section 3504a(a)(1); and (3) the Government did not establish, pursuant to 5 V.I.C. 3504a(a)(2), that defendant injured any witness *for the purpose of obstructing justice. Id.* at 66 (emphasis in original). The Court ultimately held the Bail Reform Act of 1984 and the local detention statute were equally applicable to release proceedings in the Territorial Court, and assault in the first degree was a detainable offense in the Territorial Court. *Id.* at 72. The Court noted that the Bail Reform Act was applicable, not through TERR. CT. R. 7,[35] but through the more specific provision of TERR. CT. RULE 141(b),[36] which, as

---

[34] This was the *first time* that a first degree murder defendant was prosecuted in the Territorial Court instead of the District Court.

[35] Territorial Court Rule 7 provides:

> The practice and procedure in the Territorial Court shall be governed by the rules of the territorial Court and, to the extent not inconsistent therewith, by the rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

[36] Territorial Court Rule 141(c) provides:

> (b) Whenever a person charged with an offense is before a judge of this court for release on bail prior to trial, pursuant to these rules, the judge in considering the release of such person, shall be guided by and apply the appropriate provision of "The Bail Reform Act" Public Law 98-473, October 12, 1984, 18 U.S.C. §§ 3141-

amended in 1994, mandated application of the Bail Reform Act. Thus, the *Thomas* Court ruled that the power of the local legislature to enact the local detention statute and the power of the Territorial Court to promulgate Rule 141(b), making the Bail Reform Act of 1984, as amended, applicable in the now Superior Court, both emanate from § 21(c) of the 1954 Revised Organic Act, as amended. *Id.* at 71.

Important factual distinctions, however, exist concerning the holding in *Thomas, supra,* and the issue before the Court. Because the District Court, judicially noted that the Territorial Court has applied the Bail Reform Act to its release proceeding over the years, and the October 14, 1994 General Amendments to the Territorial Court Rules continued the effect of Rule 141(b), the intent of the 1994 Amendments was to retain consistency between the Territorial Court Rules and those effective in the District Court for the benefit of bar members. *See Thomas*, 32 V.I. at 66-67, fn.2. This dicta, however cannot be read to mean that the existence of SUPER. CT. R. 141(b) is definitive in applying the Bail Reform Act to criminal matters when the Organic Act states otherwise under certain circumstances. In fact Rule 141(c) specifically states: "(c) Bail and other conditions of release shall be ordered in any of the following categories, *except as otherwise provided for serious felony matters*: ..." SUPER. CT. R. 141(c). First Degree Murder, therefore, is outside the scope of this holding, and any application of the local bail detention statute or the Bail Reform Act of 1984, as amended, is federally preempted by the pre-existing bail exception provision of § 3 of the Revised Organic Act of 1954, as amended.[37] See Revised Organic Act of 1954, as amended, § 8(a).

Finally, in, *Karpouzis v. Government of the Virgin Islands*, 961 F. Supp. 841, 36 V.I. 132 (D.V.I. App. 1997), the District Court held that Terr. Ct. R. 141 governs the setting of bail *before* conviction and requires

---

3156 (1985), which Act is by this reference incorporated into and made part of these rules.

[37] Section 8(a) of the Revised Organic Act of 1954, as amended, provides:

(a) The legislative authority and power of the Virgin Islands shall extend *to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands,* but no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, nor shall the lands or other property of non-residents be taxed at a higher rate than the lands or other property of residents.

the trial judge to be *guided* by the Bail Reform Act of 1984, as amended, in determining the conditions of release for *non-dangerous* defendants. *Karpouszis,* however, is distinguishable from the case *sub judice* because the defendant in *Karpouszis* was charged with "non-dangerous white collar crimes" which were not subject to detention under the local law or the Federal Bail Reform Act. Persons charged with Virgin Islands offenses in the Superior Court can only be detained before trial when they commit crimes qualifying as dangerous crimes under Title 5 V.I. CODE ANN. § 3504a; *Karpouzis,* 961 F. Supp. at 847. Moreover, the court ruled: "Since the Territorial Court, and this Court, can order pretrial detention solely for these specific defined offenses, only those portions of the Bail Reform Act which govern pretrial release can provide guidance for setting bail conditions for persons charged with non-dangerous Virgin Islands offenses, ..." Quoting *id.*

It is noteworthy that the court in *Karpouszis* recognized the inapplicability of the Bail Reform Act of 1966, as amended in 1984 to persons charged in the Territorial Court under local statute unless adopted by Territorial Court rules. Through this recognition, *Ortiz* was implicitly deemed inapplicable as well. Because *Karpouszis* dealt with non-dangerous crimes, the court did not have to evaluate the viability of the provisions of the local detention statute, as is required for the offense of first degree murder.

In summation, previous case law regarding the non-applicability of § 3 of the Revised Organic Act of 1954, as amended, cannot be considered controlling precedent for first degree murder cases prosecuted in the Superior Court, where the "proof is evident" or "presumption is great." No previous decision, until the instant case, has addressed the issue of whether a defendant charged with first degree murder under local statute in the Superior Court must be denied bail under § 3 of the Revised Organic Act of 1954, as amended. Applying the historic background regarding bail and the analysis of the *Ortiz* and *Solis* cases, the inescapable conclusion is that persons charged with first degree murder under local statute in the Superior Court must be denied bail pursuant to Section 3 of the 1954 Revised Organic Act, as amended, when the "proof is evident" or the "presumption is great."

67

### d. Title 5 V.I. CODE ANN. § 3504a is Pre-Empted, in Part, By § 3 of The Revised Organic Act of 1954, as Amended

 Section 3 of the Revised Organic Act of 1954, as amended, is the controlling law when a defendant is charged with murder in the first degree under local statute in the Superior Court of the Virgin Islands and the "proof is evident" or "presumption is great" because § 3 is a V.I. Constitutional provision, established in the Revised Organic Act of 1954, as amended, by Congress pursuant to Article IV, § 3, Clause 2 of the United States Constitution. It therefore preempts conflicting federal or local statutes or rules when applied in the <u>Superior Court of the Virgin Islands</u>. Thus, the local detention statute must be stricken, in part, or deemed inapplicable when it references first degree murder, if the "proof is apparent" or the "presumption is great." The plain meaning of the language of § 3 supports this conclusion and mandates that "all persons" *shall be bailable,* <u>but specifically exempting only those defendants charged with first degree murder</u> or capital crimes <u>when the "proof is evident" or the "presumption is great</u>." Section 3, however, does not make any provision for defendants charged with crimes classified as "dangerous". Title 5 V.I. CODE ANN. § 3504a(a)(1) however provides:

(a) *Who may be detained*:

(1) **Dangerous crime.** A person charged with murder in the first degree, rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, or drug trafficking (which shall mean trafficking in marijuana, hashish, cocaine, dangerous drugs, morphine or opium as provided in Title 19, section 614a, Virgin Islands Code) may by order of the court be detained upon a hearing as provided in subsection (b) prior to trial if the government certifies by motion that, based on the person's pattern of behavior consisting of his past and present conduct, the nature and circumstances of the offense charged, the weight of the evidence presented, his family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution or failure to appear at court proceedings, there is no one condition or combination of

conditions which will reasonably assure the safety of the community or; particularly in the case of a person charged with drug trafficking, that the person charged will appear for trial.

The inclusion of first degree murder in the local statute results in an impermissible conflict with the bail provision exception of § 3 under certain circumstances. *Ergo,* the Court finds that the unqualified language "murder in the first degree" must be provisionally stricken or modified from Title 5 V.I. CODE ANN. § 3504a, in the case where the "proof is evident" or the "presumption is great" that defendant committed murder in the first degree. To find otherwise would allow the local Legislature to repeal the U.S. Congressional Revised Organic Act of 1954, as amended and rewrite its own statute, obviously an impermissible proposition. In cases however where first degree murder is prosecuted in the Superior Court under local statute and the Court makes a finding that the **proof is not evident** or the **presumption is not great** that the defendant committed the offense of first degree murder, Title 5 V.I. CODE ANN. § 3504a remains in full force and effect pursuant to Title 1 V.I. CODE ANN. § 51.[38]

### e. Superior Court Rule 141(b) Is Likewise Preempted, in part, if it Conflicts With the Language of § 3 of the Revised Organic Act of 1954, As Amended, Regarding Defendants Prosecuted for First Degree Murder In The Superior Court When The "Proof Is Evident" or The "Presumption Is Great".

■ Superior Court Rule 141 is totally inapplicable, to defendants prosecuted in the Superior Court of the Virgin Islands for first degree murder when the "proof is evident" or the "presumption is great". To the extent SUPER CT. R. 141 is construed as including instances where

---

[38] Title 1 V.I. CODE ANN. § 51 provides:

Except as otherwise specifically provided, if any provision of this Code, of any amendment hereto, or of any Act or statute of the Virgin Islands, or the application of any such provision to any person, thing, or circumstance, is determined by any court of competent jurisdiction to be invalid, such determination of invalidity shall not affect, impair, or invalidate the other provisions, or the application of the other provisions, of this Code, of any amendments hereto, or of any Act or statute of the Virgin Islands which can be given without the invalid provisions, of this Code, of any amendment hereto, or of any Act or statute of the Virgin Islands are severable. Amended Feb. 10, 1967, No. 1849, § 1, Sess. L. 1967, p. 15.

defendants are prosecuted in the Superior Court for first degree murder when the "proof is evident" or "presumption is great", the Rule would likewise be preempted, in part, as being contrary and inconsistent with § 3 of the 1954 Revised Organic Act, as amended. The Rule however is not in conflict with the bail provision exception as set forth in § 3 of the Revised Organic Act of 1954, as amended because it provides for an exception to its applicability. SUPERIOR CT. R. 141(c) states in pertinent part:

> (c) Bail and other conditions of release shall be ordered in any of the following categories, *except as otherwise provided for serious felony matters.*

SUPER. CT. R. 141(c) (emphasis added). Thus, the exception provision in the Rule 141(c) must be interpreted expansively and not limited to the pretrial release conditions imposed for dangerous crimes as set forth in the Bail Reform Act which is incorporated by reference within SUPER. CT. R. 141. Unlike the Bail Reform Act of 1966, as amended, absolutely no extenuating or mitigating circumstances under § 3 of the 1954 Revised Organic Act, as amended, entitles defendants charged with first degree murder to bail under local statute in the Superior Court of the Virgin Islands, is when the "proof is evident" or the "presumption great". Eliminating defendants charged with murder in the first degree where the "proof is evident" or "presumption is great" that they committed the offense, the Bail Reform Act of 1966, which is incorporated by reference into SUPER. CT. R. 141, remains valid and viable for establishing sufficient sureties for defendants charged with serious felonies, listed therein. But even under BRA, defendants can be detained for certain offenses if certain factor can not be established.[39] Likewise, the

---

[39] The criteria utilized for determining pretrial detention for dangerous crimes set forth in Title 5 V.I. CODE ANN. § 3504a(a)(1) are valid because, *outside of their application to first degree murder,* they do not directly conflict with any express terms of the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended. Importantly, § 3 of the Revised Organic Act of 1954, as amended, also provides that "Nothing contained in this Act shall be construed to limit the power of the legislature herein provided to enact laws for the protection of life, the public health, or the public safety." As a result, the local legislature and courts have the power to enact rules and statutes for these purposes as long as the rules or statutes do not conflict with the express provisions set forth in the Revised Organic Act of 1954, as amended. Superior Court Rule

local/detention statute, set forth at 5 V.I. CODE ANN. § 3504a(a)(1), remains valid <u>except with respect to defendants charged with first degree murder</u> and prosecuted in the Superior Court, when the "proof is evident" or the "presumption is great" that they committed the offense.

## C. The "Proof was Evident" or "Presumption Great" That Joel Dowdye Committed the Offense of First Degree Murder

■ Given the vitality of the § 3 provision of the 1954 Revised Organic Act of 1954, as amended, <u>in the Superior Court,</u> a detention/bail/release hearing was scheduled to determine whether the proof is evident or the presumption great that defendant Joel Dowdye committed the offense of first degree murder. In resolving the issue, the Court assigned the People with the burden of proof since Defendant is ordinarily entitled to non excessive bail. In addition, when determining whether the "proof was evident" or the "presumption is great", the Court looked to the plain meaning of those words and phrases. After hearing and reviewing the evidence elicited during the bail/detention/release hearing, (See Section II <u>Factual and Procedural History</u>), the court concludes that the People met its burden since the proof was overwhelmingly evident and the presumption appeared, at that juncture, to be beyond cavil that defendant, Joel B. Dowdye, committed *inter alia* the offense of first degree murder. Accordingly, the defendant is not eligible for bail pursuant to § 3 of the Revised Organic Act of 1954, as amended.

## C. The Bail Provision Exception of § 3 of The 1954 Revised Organic Act, as amended, Does Not Violate Due Process

The Defendant argues that application of the bail provision exception of § 3 of the Revised Organic Act of 1954, as amended, violates his due process rights, as made applicable to the Virgin Islands through another provision of § 3 of the Revised Organic Act of 1954, as amended.[40] The Defendant's contention is without merit. Undeniably, a fair and thorough Bail/Detention Hearing was conducted, with notice given to defendant,

---

141 is an example of the courts exercising this express power, and the Rule will be deemed valid unless it conflicts with the Revised Organic Act of 1954, as amended.

[40] The very first provision of the BILL OF RIGHTS set forth at § 3 of the Revised Organic Act of 1954, as amended states: "no law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny any person therein <u>equal protection of the law.</u>

affording him the opportunity to be present and to be heard on the issue at hand. Significantly, the Court placed the burden of establishing that the "proof is evident" or the "presumption is great" upon the People, a burden undoubtedly analogous "to beyond a reasonable doubt.[41] After hearing the evidence, which included aggressive cross examination by defense counsel, and after carefully considering all the arguments on the issue by the respective counsel, the Court concludes that the People met its burden.

Additionally, the Supreme Court has ruled that "a government can, in accordance with due process, incarcerate an individual charged with a criminal offense prior to an adjudication of guilt, so long as the conditions or pre-trial detention do not amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979); *Union County Jail Inmates v. Di Buono*, 713 F.2d 984 (3d Cir. 1983), *cert. denied*, 465 U.S. 1102, 104 S. Ct. 1600, 80 L. Ed. 2d 130 (1984). Significantly, "states may constitutionally deprive detainees of liberty only to the extent necessary to ensure their presence at trial." *Duran v. Elrod*, 542 F.2d 998 (7th Cir. 1976); *United States ex rel. Tyrrell v. Speaker*, 535 F.2d 823, 827 (3d Cir. 1976); *Rhem v. Malcolm*, 507 F.2d 333, 336 (2d Cir. 1974); *Anderson v. Nosser*, 456 F.2d 835, 837-38 (5th Cir. 1972) (en banc) (modifying 438 F.2d 183 (5th Cir. 1971)), *cert. denied*, 409 U.S. 848, 93 S. Ct. 53, 34 L. Ed. 2d 89 (1972). "Pretrial confinement is not, however, a species of illegal or improper confinement, lacking in due process." *Feeley v. Sampson*, 570 F.2d 364, 369 (1st Cir. 1978). "A Detainee will have received due process in the form of some kind of probable cause determination and a bail hearing; and he has the right to a speedy trial." *Id.* citing *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

█ In view of the notice extended to the Defendant, the hearing conducted, Defendant's opportunity to be heard and the burden of proof assigned to the People, absolutely no "due process" right of defendant made applicable to him under § 3 of the Revised Organic Act of 1954, as amended was violated.

---

[41] The standard utilized under Title 18 U.S.C.A. § 3142(f)(2)(B) of The Bail Reform Act of 1966, as amended is "clear and convincing".

## D. The Bail Provision Exception of § 3 of the 1954 Revised Organic Act of 1954, as Amended, Does Not Violate Equal Protection

The Defendant argues that application of the bail provision exception of § 3 of the Revised Organic Act of 1954, as amended, violates his "Equal Protection" rights as set forth in another provision of § 3 of the Revised Organic Act of 1954,[42] as amended, because defendants prosecuted for first degree murder in the <u>Superior Court of the Virgin Islands</u> under local statute are treated less favorably than defendants prosecuted for murder in the first degree under local law in the District Court. This distinction, the Defendant argues, cannot withstand an Equal Protection challenge.

While admittedly the District Court uses different rules and statutes,[43] than this Court[44] when determining bail for a defendant charged with murder in the first degree when the "proof is evident" or the "presumption is great" that the defendant committed the offense, it is nevertheless contended that if the District Court applied the appropriate weight to the factors set forth at Title 18 U.S.C.A. § 3142(g)(1)-(2) and (4), the results would be the same as when the Superior Court applies the bail exception provision of § 3 of the Revised Organic Act of 1954, as amended, to wit: the defendant would be denied bail and would be detained. *Ergo,* there would be no Equal Protection issue.

Even if the results would be different, when addressing an Equal Protection challenge, the Court is required to apply a strict scrutiny analysis to a classification only if a suspect class or a fundamental constitutional right is implicated *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996). If, however, the classification does not involve a fundamental constitutional right or a suspect class, the Court must then determine whether there is a rational relationship between the alleged disparity of treatment and some legitimate government purpose. *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637,

---

[42] The very first provision of the BILL OF RIGHTS set forth at § 3 of the Revised Organic Act of 1954, as amended states: "no law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny any person therein equal protection of the law.

[43] The District Court uses the Bail Reform Act, as amended ("BRA") codified at Title 18 U.S.C.A. § 3141, *et seq.* and FED. R. CRIM. P. 46.

[44] This Court uses the bail exception provision contained at § 3 of the 1954 Revised Organic Act, as amended and codified at Title 48 U.S.C.A. § 1561.

125 L. Ed. 2d 257 (1992). Since application of the bail exception provision set forth at § 3 of the 1954 Revised Organic Act, as amended, does not implicate a "suspect class", the court can move on to examine whether a fundamental constitutional right has been impacted.

Interestingly enough, the Supreme Court has not specifically ruled on whether the "excessive bail" clause of the Eighth Amendment extends a constitutional "right to bail" before conviction in criminal cases. *See Bell v. Wolfish*, 441 U.S. 520, 534 n.15, 99 S. Ct. 1861, 1871 n.15, 60 L. Ed. 2d 447 (1979) (reserving the question on whether any government interest outside of guaranteeing the accused's presence at trial may justify pretrial detention); *see also Carlson v. Landon*, 342 U.S. 524, 545, 72 S. Ct. 525, 536, 96 L. Ed. 547 (1952) (stating in dicta that [the] "excessive bail clause" does not provide a right to bail). Although the Supreme Court has not ruled definitively as to whether the Eighth Amendment provides for a fundamental right to bail, the Court is not without guidance.

Historically, a fundamental right to bail was never established, and many states recognized the right to bail only through statutory enactment, not a constitutional provision. *United States v. Edwards*, 430 A.2d 1321, 1327 (D.C. Cir. 1981) *citing* Duker, *The Right to Bail: A Historical Inquiry*, 42 ALB. L. REV. at 58-66 (1977). Even where early state constitutions specifically included a right to bail provision, those constitutions also included an excessive bail clause, establishing that those states recognized a marked distinction between excessive bail and a right to bail. *Id. citing* Meyer, *Constitutionality of Pretrial Detention* (Part 1), 60 GEO. L.J. at 1180-85 (1972). In fact, the first colonial provision concerning bail was contained in section eighteen of the Massachusetts Body of Liberties of 1641, which granted a limited right to bail except for cases of capital crimes, contempt of court, and other cases expressly designated by the legislature. Later, after the colonies asserted their independence in 1776, most states adopted bail provisions from their colonial charters, incorporating them into their state constitutions. *Id.* Significantly, the Massachusetts Constitution of 1780 included an excessive bail clause, but relegated the right to bail to statutory status. *Id.* As such, it is apparent that the language contained in the excessive bail clause was intended to be a restraint on the judiciary,

not the legislature.[45] *Id.* North Carolina and Pennsylvania were the only two states whose constitutions were adopted before the Bill of Rights and also included an express right to bail in non capital cases. *Edwards,* 4300 A.2d at 1328. Significantly, even those two state constitutions included an independent and distinct excessive bail clause, suggesting that each clause had its own unique purpose for regulating bail. *Id.* Therefore, the Court finds that a "fundamental" right to bail was not established in the traditions or custom of our country.

Secondly, the Bill of Rights within the U.S. Constitution does not set forth a fundamental right to bail. The excessive bail clause was included within the text of the Bill of Rights with very little fanfare. In fact, the only recorded commentary on that clause was focused on the clause's perceived vagueness,[46] and the commentary drew no response, with the amendment being approved shortly thereafter. Proponents of the theory that a fundamental right to bail exists argue the excessive bail clause of the Eighth Amendment was a drafting error or a product of inadvertence, and assert that the drafters failed to recognize the "tripartite nature of the English protection against abusive pretrial detention, involving procedure and the right to bail as well as control of the judicial abuse of bail." *Id.* at 1329, *quoting* Foote, *The Coming Constitutional Crisis in Bail* (pt.1), 113 U. PA. L. REV. 979, 986 (1965). This argument fails because bailable offenses in England during this time period were left to Parliament, and the early colonial charters were not universal in granting a right to bail. *Id.* Further, procedural protection against abusive pretrial detention was

---

[45] The excessive bail clause of the Massachusetts Constitution of 1780 stated in pertinent part: "No Magistrate or court of law shall demand excessive bail or sureties ..." *United States v. Edwards,* 430 A.2d 1321, 1328 (D.C. Cir. 1981) *citing* MASS. CONST. of 1780, pt. 1 art. XXVI. The New Hampshire Constitution of 1784 used the exact same language, and the Maryland Constitution of 1776 provided that "[t]hat excessive bail ought not to be required...by the courts of law." *Id. citing* N.H. CONST. of 1784, art. I, s XXXIII; MD. CONSTITUTION of 1776, DECLARATION OF RIGHTS, s XXII. This language refutes any contention that the excessive bail clause, by its own force, was intended to convey a limit on the legislature by impliedly granting a "fundamental" right to bail as well as protecting against judicial abuse.

[46] The only recorded commentary on the excessive bail clause is as follows: "Mr. Livermore. The clause seems to express a great deal of humanity, on which account I have no objection to it; but as it seems to have no meaning in it, I do not think it necessary. What is meant by the terms excessive bail? Who are to be the judges? *United States v. Edwards,* 430 A.2d 1321 (D.C. Cir. 1981) *citing* ANNALS OF CONG. 782 (Gales & Seaton eds. 1789).

already addressed by inclusion of the privilege of the writ of *habeas corpus,* as provided in Art. I, 9, cl. 2 of the U.S. Constitution. *Id.* Separate and apart from Mason's Virginia proposal on excessive bail, which was adopted, seven other states submitted proposals for the Bill of Rights. *Edwards,* 430 A.2d at 1329. Of these seven proposals, two, North Carolina and Pennsylvania, had proposals that included only an excessive bail clause, even though their own state's constitution contained a right to bail clause, and of the remaining five proposals, only one, New York, included an excessive bail clause, with none containing a right to bail clause. *Id.* Obviously, there was no implicit right to bail in the Bill of Rights.[47]

Third, case law does not establish a fundamental right to bail. Despite the fact that the Supreme Court has never ruled on the issue, proponents from both sides of the argument have cited dicta contained in Supreme Court cases to support their position. Those opposed to finding a fundamental right to bail often cite the case, *Carlson v. Landon,* 342 U.S. 524, 546, 72 S. Ct. 525, 96 L. Ed. 547 (1952), which states "the very language of the [excessive bail] Amendment fails to say all arrests are bailable."[48] However, proponents of the position that there is a "fundamental" right to bail counter by citing to the case, *Stack v. Boyle,* 342 U.S. 1, 72 S. Ct. 1, 96 L. Ed. 3 (1951), a case concerning the excessiveness of certain bail orders under review, which recognized a "traditional right to freedom before conviction [which] permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to the conviction." *Id.* at 4, 72 S. Ct. at 3. The *Stack* Court noted that "unless this right to bail before trial is preserved, the

---

[47] Noteworthy is the fact that during the same session that Congress discussed and approved the Bill of Rights, it also drafted and passed the Judiciary Act of 1789. *United States v. Edwards,* 430 A.2d 1321, 1329 (D.C. Cir. 1981). Because the Judiciary Act of 1789 includes a statutory right to bail for non-capital criminal offenses, it follows that Congress recognized the difference between the excessive bail provision and the right to bail provision, and that the right to bail provision set forth within the Judiciary Act of 1789 would be redundant had Congress intended the excessive bail clause of the Bill of Rights to confer the same rights.

[48] *Carlson* involved denial of bail to a group of Communist aliens awaiting deportation. The Court held that the Eighth Amendment's excessive bail clause did not apply to civil deportation matters. Because the case dealt specifically with undocumented immigrants in a non-criminal matter, its import as legal authority for the proposition that there is no fundamental right to bail remains questionable.

presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.* at 1329. The case of *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), has however diluted the *Stack* dicta, stating that the presumption of innocence has "no application to determination of the rights of a pretrial detainee. ..." *Bell v. Wolfish*, 441 U.S. at 533, 99 S. Ct. at 1870.[49]

Because historically, bail was not deemed to be a "fundamental" constitutional right; the Bill of Rights did not expressly incorporate a "fundamental" right to bail; and the case law does not establish that there is a "fundamental" right to bail before conviction, see *Mastrian v. Hedman*, 326 F.2d 708 (8th Cir.), *cert. denied*, 376 U.S. 965, 84 S. Ct. 1128, 11 L. Ed. 2d 982 (1964); *United States ex rel. Fink v. Heyd*, 287 F. Supp. 716 (E.D. La. 1968), *aff'd*, 408 F.2d 7 (5th Cir. 1969), no strict scrutiny analysis is required. In the absence of the strict scrutiny analysis, this Court will apply the rational basis test to determine whether there is a legitimate objective promoted by the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended.[50]

---

[49] Other jurisdictions also hold there is no "absolute" right to bail under the Eighth Amendment of the U.S. Constitution. *Mastrian v. Hedman*, 326 F.2d 708 (8th Cir.), *cert denied*, 376 U.S. 965, 84 S. Ct. 1128, 11 L. Ed. 2d 982 (1964); *United States ex rel. Fink v. Heyd*, 287 F. Supp. 716 (E.D. La. 1968), *aff'd*, 408 F. 2d 7 (5th Cir. 1969); *see also* The Bail reform Act of 1966, 18 U.S.C. §§ 3146-3152 (Supp. IV, 1965-68), generally applicable only to federal prisoners; *Ballou v. Massachusetts*, 382 F.2d 292 (1st Cir. 1967); *United States ex rel. Brown v. Fogel*, 395 F.2d 291 (4th Cir. 1968).

[50] The court is aware of the case, *Escandar v. Ferguson*, 441 F. Supp 53 (S.D. Fl. 1977), where a Florida court struck down on procedural equal protection grounds constitutional bail provision almost identical to the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, where bail was denied to defendants in life felony cases where proof was evident or presumption great that the offense was committed. The court reasoned that because defendants might be granted bail in nonlife felony cases or life felony cases where proof was not evident or presumption not great, the constitutional provision affected fundamental rights and could be upheld only if it promoted compelling government interest and was the least restrictive means of effectuating that interest. Citing *Stack v. Boyle*, 342 U.S. 1, 72 S. Ct. 1, 96 L. Ed. 3 (1951), the court found the classification to be one affecting a fundamental right, and applying a strict scrutiny analysis, found that the sole interest served by bail is to assure presence at trial. The court ruled the provision in question relied solely on the degree of proof on the criminal charge itself with no other inquiry made into the likelihood of defendant's appearance at trial. Because nonlife felony defendants received full hearings that included ties to community and prior record, as well as seriousness of the charge, the court found the constitutional provision to be too narrow and suggested that a less restrictive means was available by holding evidentiary hearings in which judges looked to

The classification at issue in this case under consideration is the class of defendants charged under local statute with first degree murder in the Superior Court of the Virgin Islands, who are automatically denied bail when the "proof is evident" or the "presumption great", that defendant committed the offense of murder in the first degree as compared with the class of individuals charged with first degree murder in the District Court of the Virgin Islands, who *may* qualify for release under the Bail Reform Act. The key inquiry to be determined by the Court is whether the difference in treatment ... rationally furthers a legitimate state interest. *Nordlinger v. Hahn*, 505 U.S. 1, 12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992). Under this analysis, legislation enjoys a presumption of validity, and "the petitioner [the one asserting the constitutional violations] must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Quoting Brian B. v. Pennsylvania Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000). The Court itself may even hypothesize as to the motives of the legislature to find a legitimate objective promoted by the provision under attack. *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980).

■ The bail provision exception set forth at § 3 of the Revised Organic Act of 1954, as amended, is not punishment, but a restraint imposed on detainees to address legitimate and *compelling* government concerns.[51] Those concerns in the Virgin Islands *are to assure that persons charged with first degree murder and capital felonies can be produced at trial. See Stack v. Boyle*, 342 U.S. 1, 72 S. Ct. 1, 96 L. Ed. 3 (1951). The Superior Court and the Government of the Virgin Islands have limited financial and human resources in comparison to the federal Government and judiciary. The local court is also limited in its jurisdiction and ability to pursue fugitives who flee to the mainland United States or other foreign jurisdictions while awaiting trial. The District Court, on the other hand, has nationwide service of process.

the totality of the circumstances on a case by case basis. In addition, the court ruled the provision also violated due process because it imposed an unshakable, irrebuttable presumption of non-appearance at trial. This Court finds *Escandar* to be unpersuasive because, as previously discussed, *Stack* does not definitively establish a fundamental right to bail particularly given the ruling in *Bell, supra*, which was decided after *Escandar*. Thus, strict scrutiny is not required.

[51] The U.S. Virgin Islands has limited financial and human resources to search for and return fugitives. Furthermore, its geographic vulnerability (being surrounded by water) makes flight to a state-side or foreign jurisdiction a legitimate concern.

Furthermore, the District Court has unlimited financial resources, backed by the United States Government, to pursue fugitives, etc. Thus, there is not only a rational basis, but a *compelling* reason for denying bail to detainees charged in the Superior Court with first degree murder, an offense carrying a mandatory life imprisonment sentence without any possibility of parole, consistent with § 3 of the Revised Organic Act of 1954, as amended, where the "proof is evident" or "presumption is great" that the defendant committed the offense. Under said circumstances, no incentive exists not to flee the jurisdiction. Therefore no release condition imposed can reasonably or adequately assure that the defendant will appear at trial. In addition, such defendants potentially pose a great danger to the community, and may even attempt to hinder the judicial system through intimidation of key prosecution witnesses. Consequently, the Court finds that there is a rational relationship between the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, and the legitimate goals of preventing flight from justice, protecting the community from potentially dangerous persons, and protecting individual witnesses from intimidation. For all these reasons the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, does not violate the Defendant's Equal Protection Rights, as made applicable through § 3 of the Revised Organic Act of 1954, as amended.

## E. The Bail Provision Exception of The 1954 Revised Organic Act is Not Void for Vagueness

As a third constitutional challenge to the bail provision exception set forth at § 3 of the Revised Organic Act of 1954, as amended, the Defendant contends that the Organic Act provision is "void for vagueness". Specifically, the Defendant argues the language "proof is evident"[52] or "presumption is great"[53] does not establish a clear standard to be utilized by the Court.

---

[52] Synonyms for "evident" include: axiomatic, barefaced, clear, clear-cut, conspicuous, crystal clear, distinct, fact, incontestable, incontrovertible, indisputable, logical, manifest, noticeable, obvious, palpable, patent, perceptible, plain, reasonable, straightforward, tangible, unambiguous, unmistakable, and visible. ROGET'S NEW MILLENNIUM THESAURUS, First Edition (v. 1.2.1), Lexico Publishing Group, LLC (2006).

[53] Synonyms for "presumption" include: anticipation, apriorism, assumption, basis, chance, conjecture, grounds, guess, hypothesis, likelihood, opinion, plausibility, posit,

Generally, statutes are deemed to be unconstitutionally vague only when they fail in their definiteness or adequacy of statutory expression. *See, Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (Pa. 1983). The "void for vagueness" doctrine turns on notions of due process, and to survive scrutiny, the statute must provide reasonable standards by which a person may gauge his future conduct, *i.e.*, notice and warning. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244, 246 (1976). When addressing a criminal statute, the Supreme Court has ruled that to withstand constitutional scrutiny based upon a challenge of "void for vagueness" a statute must satisfy two requirements: (a) the statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (b) it must do so in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 358, 103 S.Ct. 1855.

■ The Court finds adequate notice and warning have been provided in the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, not only to clarify the charge of First Degree Murder but also by looking to the "plain meaning" of the terms in question. The terms "proof is evident" or the "presumption is great" are not foreign to the legal community, and they are employed in a substantial number of state constitutional provisions. Additionally, these terms are defined and case annotations are provided in the legal text. Accordingly, the Court finds that the statute is not unconstitutionally "void for vagueness".

## IV. CONCLUSION

For all the reasons discussed hereinabove: (1) the 1970 *Ortiz* decision, as it applies to defendants charged with first degree murder under local statute in the Superior Court, is not controlling in *this* Court; (2) the "proof is evident" or "presumption is great" that defendant, Joel Dowdye, committed the offense of first degree murder; (3) the bail

---

postulate, postulation, premise, presupposition, probability, reason, shot, sneaking suspicion, stab, supposition, surmise, suspicion, and thesis. ROGET'S NEW MILLENNIUM THESAURUS, First Edition (v. 1.2.1), Lexico Publishing Group, LLC (2006); a rule of law, statutory or judicial, by which finding a basic fact gives rise to existence of presumed fact, until presumption is rebutted. BLACK'S LAW DICTIONARY 1067 (Special Deluxe 5th ed. 1979).

provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, does not violate the Defendant's Due Process rights as applicable to the Virgin Islands through § 3 of the Revised Organic Act of 1954, as amended; (4) the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, does not violate the Defendant's Equal Protection rights as applicable to the Virgin Islands through § 3 of the Revised Organic Act of 1954, as amended; and (5) the bail provision exception set forth in § 3 of the Revised Organic Act of 1954, as amended, is not unconstitutionally void-for-vagueness. Accordingly, the defendant Joel B. Dowdye is not entitled to bail and must therefore be detained pending trial.